# Aronson v. Heymann, Appellant.

*Vendor and vendee—Mortgage—Bond—"Straw bond"—Liability of straw man.*

1. The words "five thousand dollars to be secured by a second mortgage (straw bond) for the term of one year, interest at 6%" do not mean that neither the maker ·of the bond, nor any other person no matter what the terms of the instrument thereafter to be made might be, was to be legally liable to be called on to pay anything upon the bond. The words rather mean that the vendee shall not be required to assume a direct liability to the vendor for the payment of the amount of the bond, nor be required to. furnish a bond made by a party who is financially satisfactory to the vendee.

2. In such a case if the mortgage is foreclosed, and there is a deficiency, and the straw man having become of financial ability, has been compelled to pay the deficiency to the vendor, the straw man may recover from the vendee the amount paid.

Argued Oct. 16, 1913. Appeal, No. 51, Oct. T., 1913, by defendant, from order of C. P. No. 2, Phila. Co., Dec. T., 1912, No. 1,006, making absolute rule for judgment for want of a sufficient affidavit of defense in case of Jules E. Aronson v. Joseph C. Heymann. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit to recover money paid for and on behalf of defendant.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that on October 27, 1910, Mastbaum & Fleisher, agents of Carrie Gansman, entered into an agreement in writing to sell to Joseph C. Heymann, premises 18 North Sixth street in the city of Philadelphia for the sum of $16,000, upon the following terms:

"Ten thousand ($10,000) Dollars is now secured by a first mortgage at 4 3-10%, Five thousand ($5,000) Dollars to be secured by a second mortgage (straw bond)

for the term of one year interest at 6%. Mortgage shall be accompanied by full title insurance and satisfactory fire insurance."

The defendant paid $1,000 to Carrie Gansman. Carrie Gansman conveyed the property to the "straw" man, Jules E. Aronson, the plaintiff, subject to a mortgage of $10,000 already on the property. The plaintiff gave to Mastbaum & Fleisher, agents for Carrie Gansman, his bond and mortgage in the sum of $5,000 and then conveyed the property to the defendant, under and subject to these two mortgages.

Subsequently Carrie Gansman foreclosed the mortgage, but did not realize a sum sufficient to pay the mortgage debt. She accordingly entered judgment upon the bond and collected the balance, $972.87, from Jules E. Aronson, the plaintiff. The plaintiff paid the judgment and brought this suit.

I aver that the provision to accept a straw bond was a waiver by the vendor of all personal liability on my part, and an agreement that, in the event of default in payment of principal or interest on said mortgage, recourse should be had to the property only, and no recourse should be had on the bond against the maker thereof or any other person. A copy of said agreement is hereto attached marked exhibit "A."

"I aver that, in pursuance of said agreement, on November 11, 1910, for the purpose of executing the mortgage and straw bond under said agreement, title to said property was conveyed by said Carrie Gansman to plaintiff; that thereupon said bond and mortgage were executed by plaintiff, and immediately thereafter deed was made by me with said Mastbaum & Fleisher, agents, executed by said plaintiff to me. I aver that settlement for said property in accordance with the agreement was for and on account of said Carrie Gansman and that no part of the said consideration money was paid to said plaintiff, nor did he have any part in the agreement, settlement or title to said property except

as a conduit for the purpose of passing title to me and executing said mortgage and straw bond.

"I aver that any payment made by said plaintiff to Carrie Gansman was a voluntary payment on his part, made by him with full knowledge that the bond upon which recovery is alleged to be made against him was a straw bond and that the receipt of any money from plaintiff by said Carrie Gansman was in violation of her agreement with me.

"I aver that I am not indebted to plaintiff in any amount whatever."

The court made absolute rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court making absolute rule for judgment for want of a sufficient affidavit of defense.

*Henry Spalding,* of *Fell & Spalding,* with him *Joseph A. Slattery,* for appellant.—As the obligation of the vendee to indemnify the vendor does not rest on express agreement, but is implied by the law, from the circumstances it is clearly competent for the vendee to show that it was expressly agreed that he should not be liable: Samuel v. Peyton, 88 Pa. 465; Girard Life Ins. Co. v. Addicks, 5 W. N. C. 75.

Where there is an express understanding that the vendee shall not be liable there can be no implied obligation on the part of the vendee, because an implied contract cannot exist where there is an express one about the same subject-matter: Siegel v. Borland, 191 Ill. 107.

The affirmance of this judgment would mean the imposition upon grantees of real estate of a personal liability in thousands of similar transactions in which it has always been supposed that no such personal liability existed.

*H. J. Nelson,* of *Nelson & Chew,* for appellee.—The plaintiff does not contend that the words "straw bond"

meant nothing whatever. On the contrary, the plaintiff admits, and always has admitted, that those words have a very plain, definite meaning, viz., that the defendant was not to be personally liable to the mortgagee, Carrie Gansman.

A "straw bond" is a real bond given by a person who is not, at the time, considered financially responsible. But the "straw man" of to-day may be the millionaire of to-morrow. It was agreed that the vendor would take a "straw bond," meaning, in the language of the street, a bond by a man who, at the time he gave it, was worth little, a man from whom, in case of default, possibly nothing could be collected—not legally uncollectible, but financially or practically uncollectible. It happened that, subsequently, the "straw man" became a real man and had to pay up, with the result that the defendant became liable under the law as laid down by this court.

OPINION BY PORTER, J., April 20, 1914:

The appeal in this case is by the defendant, who assigns for error the action of the court below in making absolute a rule for judgment for want of a sufficient affidavit of defense. The claim of the plaintiff arose out of a transaction involving the sale and conveyance of a lot of ground, upon which was erected a building, in the city of Philadelphia. Carrie Gansman, on November 11, 1910, conveyed the lot to the plaintiff, who gave his bond, containing a warrant of attorney to confess judgment against him, secured by a mortgage upon the property, for $5,000 of the purchase money. The plaintiff, upon the same day, conveyed the property to the defendant, by a deed which covenanted that the conveyance was made "under and subject to the payment of the mortgage debt or principal sum of five thousand dollars with interest thereon" meaning the mortgage debt above mentioned. The defendant made default in the payment of the principal sum of said bond and mortgage and a writ of scire

facias was issued upon the mortgage, prosecuted to judgment, and the property was, on April 2, 1912, sold under said proceedings for a sum insufficient to pay the mortgage debt, leaving a balance due on the bond of $972.87. The defendant had due notice of this proceeding. Carrie Gansman subsequently entered judgment against the plaintiff upon his bond, by virtue of the warrant of attorney contained therein, and the damages were therein assessed in the said sum of $972.87, of which proceeding this defendant had due notice. The plaintiff having paid the amount of this judgment, in several installments, to Carrie Gansman, subsequently brought this action alleging the right to recover the same of the defendant. The statement of the plaintiff and the affidavit of defense are in harmony as to the facts thus far stated.

That upon the covenants of the deeds and the bond and mortgage, standing alone, the plaintiff is entitled to recover of the defendant any amount which he had been legally required to pay upon the bond because of a deficiency in the amount realized from the sale upon the mortgage to discharge the debt is conceded by the defendant. "The words 'under and subject' in a conveyance, import that the grantee takes the land subject to an encumbrance, the amount of which has been deducted from the agreed price, and the covenant to be inferred from it is that of indemnity for the protection of the grantor:" Faulkner v. McHenry, 235 Pa. 298; Tritten's Estate, 238 Pa. 555; May's Estate, 218 Pa. 64. The defendant contends that this case is taken out of the operation of this rule because of averments in the affidavit of defense, which may be summarized as follows. The agents of Carrie Gansman had entered into a written agreement with this defendant, dated October 27, 1910, under the covenants of which Carrie Gansman, who then owned the property, agreed to sell and convey the same to the defendant, who agreed to purchase the same at a price agreed upon, a part of the

purchase money, "Five thousand ($5000.00) dollars to be secured by a second mortgage (straw bond) for the term of one year interest at six per cent." The defendant asserts that the words "straw bond" thus inserted in the agreement must be construed to mean that neither the maker of the bond nor any other person, no matter what the terms of the instrument thereafter to be made might be, was to be legally liable to be called on to pay anything upon the bond. He argues that, therefore, the plaintiff was not called upon to pay the amount of the judgment which had been entered against him and that that payment must be held to have been a voluntary one. These two words, thus included in the parenthesis, in the agreement of sale cannot be held to control all the covenants of the deed, the bond and the mortgage which were subsequently executed and superseded the provisions of the agreement. The term "straw bond" is not usually understood as referring to the covenants of the bond or whether those covenants are legally enforceable; this term is usually accepted as referring to the financial standing of the man who makes the bond. The bond is a real bond, but the man who makes it is supposed to be execution proof. The words in this agreement meant that this defendant should not be required to assume a direct liability to Carrie Gansman for the payment of the amount of the bond, nor should he be required to furnish a bond made by a party who was financially satisfactory to her. These parties put their own construction upon this clause of the agreement, when the time came for carrying it into execution; as is disclosed by the affidavit of defense: "I aver that, in pursuance of said agreement, on the 11th day of November 1910, for the purpose of executing the mortgage and straw bond under this agreement, title to said property was conveyed by said Carrie Gansman to plaintiff, that thereupon said bond and mortgage were executed by plaintiff, and immediately thereafter deed was executed by said plaintiff

to me." · The result was that this plaintiff delivered to Carrie Gansman a bond which not only bound him personally but contained a warrant of attorney authorizing confession of judgment against him. The defendant may have thought that this plaintiff was a straw man from whom nothing could be collected, but in this he was mistaken. The plaintiff had not been a party to the agreement of October 27 and there is no allegation in the affidavit of defense that he knew anything about that agreement at the time he executed and delivered the bond to Carrie Gansman. The affidavit of defense does not aver any fact which would have been available to the plaintiff as a defense against the bond which he had executed and delivered. The bond was an unconditional undertaking to pay money, a part of the money remained unpaid, and Carrie Gansman was entitled to enter judgment, which this plaintiff has paid.

The judgment is affirmed.