MINERS SAV. BANK OF PITTSTON, PA., v. JOYCE et al.

UNITED STATES v. SAME.

ROBERTSON et al. v. SAME.

Nos. 6302, 6307, 6310.

Circuit Court of Appeals, Third Circuit.

April 14, 1938.

Rehearing Denied June 2, 1938.

W. L. Pace, of Pittston, Pa., for Miners Sav. Bank of Pittston, Pa.

James W. Morris, Asst. Atty. Gen., Sewall Key and Clarence E. Dawson, Sp. Assts. to Atty. Gen., Frederick V. Follmer, U. S. Atty., of Scranton, Pa., and Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa., for the United States.

R. L. Levy, of Scranton, Pa., for Nelson Robertson.

John P. Kelly, W. J. Fitzgerald, and Edward J. Kelly, all of Scranton, Pa. (Kelly, Fitzgerald & Kelly, of Scranton, Pa., of counsel), for appellees.

Leo W. White, W. H. Gillespie, and Frank M. Flanagan, all of Pittston, Pa., and R. L. Coughlin, of Wilkes-Barre, Pa., amici curiae.

Before BUFFINGTON and BIGGS, Circuit Judges, and MARIS, District Judge.

MARIS, District Judge.

On June 30, 1934 the Howell & King Company filed a debtor's petition under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207 and note, in the District Court for the Middle District of Pennsylvania. On the same day the court appointed P. F. Joyce trustee and on October 2, 1934, C. Raymond Bensinger and Peter Noll were appointed additional trustees. The trustees were authorized to continue the business of the debtor. In accordance with its practice the court referred the proceeding to David Rosenthal, Esq., one of the referees in bankruptcy, as special master.

On June 19, 1935, the court entered a decree directing the trustees of the debtor to liquidate the estate and to make public sale of the assets and on the same day referred the case to David Rosenthal, Esq., as referee. Upon an appeal from that decree this court on August 30, 1935, by agreement and with the consent of the parties, ordered the trustees to proceed to cause the assets of the debtor and bankrupt to be liquidated, to sell all the said assets free and discharged of all liens, which were to be transferred to the proceeds. The order further provided that should the Miners Savings Bank of Pittston, Pa., the mortgagee and trustee for bondholders, or any holders of bonds secured by the mortgage, become the purchasers, it or they, "after the payment to said Trustees in cash at the time and in the manner provided by terms of sale on bid of an amount not exceeding $55,000.-00," might deliver to the trustees bonds to be credited on account of the balance due on the bid. On October 14, 1935, pursuant to the order of this court, the trustees sold all of the real and personal property of the bankrupt at public sale as an entirety to the attorney for the Miners Savings Bank of Pittston, Pa., as mortgagee, for $55,000, which sale was confirmed absolutely on October 25, 1935.

On December 9, 1935, the trustees filed their first and final account and on July 30, 1936, pursuant to order of the court, they filed a restated account. Exceptions were filed to the account and to the order of distribution made by the referee. Upon review these exceptions were disposed of by the court below in an opinion filed November 17, 1936. In re Howell & King Co., D.C., 16 F.Supp. 984. From the decree confirming the account and awarding distribution of the balance shown thereby, which was entered pursuant to that opinion, appeals have been taken by the Miners Savings Bank of Pittston, Pa., as mortgagee and trustee for bondholders, by the United States of America, as a tax claimant, and by Nelson Robertson and others, as wage claimants. Each appeal raises distinct questions and we will, therefore, consider each separately.

Appeal of Miners Savings Bank of Pittston, Pa., Mortgagee and Trustee for Bondholders (No. 6302).

This appeal by the holder of the first mortgage upon the debtor's real estate and plant in turn raises a number of questions which require separate discussion. The first is raised by the second assignment of

error and relates to the refusal of the court to allow the costs of the prior appeal, amounting to $45, to be paid out of the estate as an expense of administration. The court evidently overlooked the provision contained in the prior order of this court entered August 30, 1935, which directed that the cost in connection with the former appeal should be paid by the appellees, the trustees of the debtor. These costs should have been allowed as an expense of administration.

■ The next question arises under the third, fifth, sixth, and seventh assignments of error and relates to the amount of compensation allowed to the trustees of the debtor by the court below. As we have seen, the court on June 19, 1935, ordered the trustees to liquidate the estate and referred the matter to a referee in bankruptcy. The provisions of subdivision (k) of section 77B, 11 U.S.C.A. § 207(k), therefore, applied to the liquidation from that time. In re Collins Hosiery Mills, D.C., 18 F.Supp. 89. It follows under the terms of that subdivision that the compensation of the trustees of the debtor, both in the reorganization proceeding prior to June 19, 1935, and in the liquidation proceeding thereafter, must be limited to the amounts specified in section 48 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 76. Callaghan v. Reconstruction Finance Corp., 297 U.S. 464, 56 S.Ct. 519, 80 L. Ed. 804. In that case Mr. Justice Stone said on this point (297 U.S. 464, at page 469, 56 S.Ct. 519, 521, 80 L.Ed. 804): "Where the attempted reorganization results in liquidation, sections 40, 48 [11 U.S.C.A. §§ 68, 76], regulating the fees of referees, receivers and trustees in bankruptcy, are incorporated by reference in Section 77B (k), 11 U.S.C.A. § 207(k), and are likewise made to control the fees of such officers in the reorganization proceedings."

It is conceded that the compensation allowed the trustees by the court below exceeded the amounts allowable under section 48, 11 U.S.C.A. § 76. Their compensation must, therefore, be reduced to the amount fixed by the statute.

■ The next question is raised by the fourth and eighth assignments of error which refer to the compensation allowed by the court below to the special master and referee. David Rosenthal, Esq., referee in bankruptcy, was appointed special master during the pendency of the reorganization proceeding and on June 19, 1935, the liquidation proceedings were referred to him as referee. For his services as special master he is entitled to such reasonable compensation as the court may fix, Section 77B, subd. (c) (11), 11 U.S.C.A. § 207(c) (11). In this case the first and final account of the trustees which was confirmed by the court shows that payment of $2,000 to Mr. Rosenthal "on account of fees." While $1,475 of this was actually paid to him after June 19, 1935, when his services as special master ceased, $1,000 of it appears to have been allowed to him by the court on January 24, 1935, and it was all claimed by him as special master. The sum does not seem to us to be unreasonable for his services as special master and we are satisfied that it should not be disturbed.

■ In addition the court below in the decree appealed from allowed him $1,000 more as referee. This allowance cannot be sustained since his fees as referee in a liquidation proceeding under subdivision (k) of section 77B, 11 U.S.C.A. § 207(k), are limited to the amount allowed by section 40, 11 U.S.C.A. § 68, and the sum allowed was conceded to exceed that amount. His allowance must, therefore, be recomputed under that section. Callaghan v. Reconstruction Finance Corp., 297 U.S. 464, 471, 56 S.Ct. 519, 522, 80 L.Ed. 804.

The ninth assignment of error relates to the finding by the court below that a minimum sale price for the property of the debtor was fixed at the request of the mortgagee. It is clear from an examination of the order of sale entered by this court on August 30, 1935, by agreement of the parties that no minimum sale price was fixed. Nor do we find in the record any evidence which would sustain a finding that such a minimum sale price was requested by this appellant.

■ The tenth assignment of error refers to the failure of the trustees in their account to segregate the proceeds of the sale of the debtor's property and to state separately the disbursements made therefrom. We think that the trustees should be required to state separately the proceeds of the sale and the disbursements made therefrom. The order of sale directed the liens on the property sold to be transferred to the proceeds of the sale. This made it imperative, if the rights of the

lienholders were to be protected, to segregate the proceeds of the sale and to state an account of the proceeds separately. The failure of the trustees to do so in practical effect made it impossible for the court below to carry out the direction of the decree of sale entered by this court which transferred the liens on the property to the proceeds of the sale and authorized the lienholders to make their claims against the proceeds. It is impossible from the account as stated to determine whether the balance in the hands of the trustees was actually derived from the proceeds of the sale or from some other source. The account must, therefore, be restated.

The first assignment of error complains of the refusal of the court below to apply the proceeds from the sale of the debtor's property and the rentals collected from its real estate to the payment of administration expenses to the exclusion of the claim of appellant as mortgagee having a lien upon the fund. In considering this question it must of course be conceded that section 67d of the Bankruptcy Act, as amended, 11 U.S.C.A. § 107(d), protects the lien of the mortgagee in this case upon the property of the debtor. When the property was sold clear of liens the mortgagee's lien was expressly transferred to the fund realized from the sale. The question raised by this assignment is whether under the circumstances the mortgagee is entitled to have paid to it the entire proceeds of the sale remaining after the payment of the costs of the sale and the prior tax liens or whether it must also be postponed to the payment of the administration expenses which the court below directed to be paid out of the fund.

■ While there is authority for the proposition that one who has a lien on the property of a bankrupt is entitled to be paid in full out of the proceeds of the liened property subject only to prior liens and a contribution to the expense of administering the bankrupt estate not in excess of what it would have cost to foreclose the lien, Odendahl v. Pokorny Realty Co., 5 Cir., 76 F.2d 271, we think the true rule to be that, where a trustee sells a bankrupt's property free of liens, with the consent of the lienholders, the latter are chargeable not only with the actual costs of sale but also with expenses reasonably incurred in the preservation of the property, Virginia Securities Corporation

v. Patrick Orchards, 4 Cir., 20 F.2d 78, and with the trustee's and referee's commissions payable with respect to the proceeds of the sale, Tawney v. Clemson, 4 Cir., 81 F.2d 300, but with no other expenses of administration, except with their consent, express or implied, In re Torchia, 3 Cir., 188 F. 207.

■ Where, as here, the business of the debtor was carried on prior to the sale in the hope of reorganization the lienholder's forbearance in not foreclosing its lien, which enabled the business to be thus carried on in the mortgaged property, was obviously for the benefit of the debtor and its general creditors. The fact that the mortgagee did not press for foreclosure but consented to permit the business to be carried on in the mortgaged property should not be held to penalize it by postponing its lien to the expenses of operating the business, since to so hold would be to place a penalty upon a lien creditor for its forbearance and for the consideration which it has shown for general creditors. This of course is not to say that the lienholder should not bear the reasonable expenses of preserving the property, which expenses were clearly for its benefit.

We conclude that the proceeds of the sale of the mortgaged property, as well as the net rents received therefrom after the deduction of expenses applicable thereto, should be devoted to the payment of the costs of sale, the commissions of the trustees and the referee applicable thereto, and the reasonable expenses of preserving the property, and that the balance thereof should be applied to the payment of the liens in the order of their priority, including the lien of the mortgage.

## Appeal of the United States of America (No. 6307).

■ This appeal raises the question whether the claim of the United States for taxes was a lien on the fund derived from the sale of the debtor's property or whether it was otherwise entitled to payment out of that fund on a parity with other tax claims. The county, city, school, and poor taxes were first liens upon the real estate under the Pennsylvania Act of May 16, 1923, P.L. 207, § 2, 53 P.S.Pa. § 2022. The state taxes were first liens upon all the debtor's property under the Pennsylvania Act of April 9, 1929, P.L. 343, § 1401, 72 P.S. § 1401. The taxes were,

therefore, all first liens upon the proceeds of the sale under the terms of the decree of sale, which transferred the liens to the fund. On the other hand the tax claimed by the United States was not a lien on the property valid as against the mortgagee, whose claim against the balance of the proceeds of the sale we have held should be allowed, since notice of the government's lien was not, in accordance with section 3186, Rev.St., as amended, 26 U.S.C.A. §§ 1560–1567, filed in the office of the prothonotary of Luzerne county as authorized by the Pennsylvania Act of May 1, 1929, P.L. 1215, 74 P.S.Pa. § 141 et seq.

■ Section 67d of the Bankruptcy Act, as amended, 11 U.S.C.A. § 107(d), which provides that liens given or accepted in good faith shall not be affected by anything in the act, applies to tax liens, In re Brannon, 5 Cir., 62 F.2d 959, certiorari denied, Ryan v. City of Dallas, 289 U.S. 742, 53 S.Ct. 692, 77 L.Ed. 1489; Dunn v. Interstate Bond Co., 5 Cir., 68 F.2d 364, certiorari denied 292 U.S. 645, 54 S.Ct. 779, 78 L.Ed. 1496; Ingram v. Coos County, Or., 9 Cir., 71 F.2d 889; In re Ivel Displays, Inc., 2 Cir., 74 F.2d 702, and such liens are payable in bankruptcy out of the proceeds of the sale of the property subject to the liens ahead of claims having priority under section 64, 11 U.S.C.A. § 104. This is for the reason that section 64 lays down the priorities for paying out the net balance of the funds derived from the liquidation of the bankrupt's property which remains after all special liens and incumbrances have been provided for, In re Brannon, supra, and does not refer to lien debts. Richmond v. Bird, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; In re Cardwell, D.C., 52 F. 2d 158; U. S. Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 80 F.2d 235. In this case the only claim of the United States to priority is under section 64, however. It is obvious that the liens against the proceeds of the sale of the debtor's property, when the lien of the mortgage is included, far exceed the fund. There is, therefore, nothing left to distribute under section 64 and the court properly refused to award any portion of the fund to the United States upon its claim.

### Appeal of Nelson Robertson and Others (No. 6310).

■ This appeal involves the right of certain wage claimants to distribution out of the fund. They contend that the real and personal property of the debtor was sold as an entirety and since an admixture of the funds derived from both classes of property took place the tax liens applicable to the real estate only were lost and the claimants are, therefore, relegated to their priorities under section 64, which gives wage claimants priority over taxes. We think that this contention is unsound. While it may be admitted that the local tax liens were against the real estate only, their right against the proceeds of the sale of the real estate was preserved by the order of sale and they were, therefore, not required to except to the order confirming the sale of the real and personal property as an entirety nor were they prejudiced thereby. Geo. Carroll & Bro. Co. v. Young, 3 Cir., 119 F. 576; In re Benz, 3 Cir., 218 F. 50; First Savings & Banking Co. v. Kilmer, 4 Cir., 263 F. 497; In re Wilkes, 2 Cir., 55 F.2d 224. The court below found that the fund in the hands of the trustees was produced by the real estate and that the amount realized from the personalty was nominal. We think that the record supports this finding but even if it were otherwise the tax claimants would be entitled to have a determination by the referee of the proportion of the fund derived from sale of the property which was applicable to the real estate.

■ It was suggested at the argument that such a determination would show that a substantial part of the fund was derived from the sale of the personalty and that the wage claimants had a lien on this property which under the decree of sale they are entitled to enforce against its proceeds. It is clear, however, that under the law of Pennsylvania the wage claimants do not have a lien in the true sense but merely a priority in the distribution of the proceeds of a judicial sale, Wilkinson v. Patton, 162 Pa. 12, 29 A. 293; Mettfett v. Mohn, 171 Pa. 395, 33 A. 367; In re Curran's Restaurant & Baking Co., D.C., 11 F.Supp. 8, and then only if notice in writing of their claims is given before the sale to the officers making the same, 43 P.S.Pa. § 222. So far as appears no such notice was here given. It follows that even if a part of the fund before the court was derived from the sale of the personalty the wage claimants would not be entitled to distribution out of it ahead of the commonwealth of Pennsylvania, which has a lien on the entire

property of the debtor, or the mortgagee, which has a lien on substantially all of the property, both real and personal, since it constituted an industrial plant and was, therefore, real estate subject to the lien of the mortgage under Pennsylvania law. Titus **v.** Poland Coal Co., 275 Pa. 431, 119 A. 540; Com. Trust Co. of Pittsburgh v. Harkins, 312 Pa. 402, 167 A. 278.

Consequently, even upon the theory that because of an admixture of funds derived from the sale of real and personal property the local tax claims should be held to have lost their liens, the balance of the mixed fund would still be distributable to the commonwealth and to the mortgagee. It follows that the action of the court below in refusing to award any part of the fund to the wage claimants was right.

The appeals of the United States of America (No. 6307) and of Nelson Robertson and others (No. 6310) are dismissed. The appeal of Miners Savings Bank of Pittston, Pa., (No. 6302) is sustained, the decree appealed from is reversed to the extent indicated in this opinion, and the case is remanded to the court below, with instructions to direct the restatement of the trustees' account and to take further proceeding thereupon not inconsistent herewith.