Commonwealth *v.* Hoffman-Henon Company (et al., Appellant).

Argued November 16, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

214

[case caption redacted]

*Theodore Voorhees*, with him *Christopher Branda, Jr.*, and *Barnes, Dechert, Price, Myers & Rhoads*, for appellants.

*Hyman Zuckerman*, with him *David D. Goff* and *Goff & Rubin*, for appellee.

OPINION BY MR. JUSTICE JONES, May 25, 1955:

The Commonwealth issued a scire facias sur lien for capital stock and corporate loan taxes settled against the defendant, Hoffman-Henon Company, a Pennsylvania corporation, summoning the substituted executors and trustees of the estate of Eli Kirk Price, deceased, as terre-tenants. The terre-tenants answered that the Commonwealth's asserted lien was discharged by a judicial sale of the property upon the foreclosure of a mortgage given by a predecessor in title and that the terre-tenants had acquired the mortgaged property at the sheriff's sale free of the lien of the Commonwealth. The court below gave judgment for the Commonwealth in the aggregate amount of the liened taxes with interest from dates of settlement, and the terre-tenants took this appeal.

The real question involved is whether a straw man, to whom a corporation conveys its property for the purpose of having him mortgage it to secure a loan

for the corporation's use and who thereafter reconveys the property to the corporation, subject to the mortgage, is a predecessor in title within the meaning of Section 1401 of The Fiscal Code of 1929, P. L. 343, as amended by the Act of June 3, 1933, P. L. 1474, 72 PS §1401.

The circumstances under which the question arose are as follows. The defendant corporation acquired title to premises at 156-162 North 20th Street, Philadelphia, by four separate conveyances during the period 1926 to 1928. On June 8, 1931, Paul J. Henon, Jr., and Daniel T. Henon, respectively president and secretary of the corporation, made a written application in their individual names to the executors and trustees of the Price Estate for a mortgage loan in the amount of $40,000 on the premises above mentioned, reciting in their application that they would become "bondsmen and future owners in fee" of the property. By deed dated June 17, 1931, the corporation conveyed its realty to the Henons, in fee simple. The corporate acknowledgment of the deed recited that it was executed and delivered "in pursuance of a resolution of said corporation made June 17, 1931." On the same day the Henons executed a bond to the Price Estate in the sum of $40,000 secured by their mortgage of the premises in question. The Henons at once transferred the proceeds of the loan to the corporation. Approximately three weeks later, viz., on July 11, 1931, the Henons reconveyed the property to the company subject to the mortgage to the Price Estate. Between August 25, 1932, and September 22, 1936, the Commonwealth settled against the defendant corporation the capital stock and corporation loan taxes here involved.

Early in 1935, the mortgage then being in default, the trustees of the Price Estate foreclosed it and

bought in the property at the sheriff's sale, held on February 4, 1935, for a bid of $50. At the request of the Secretary of Revenue, one of the executors and trustees of the Price Estate executed an affidavit on May 1, 1935, reciting the giving of the mortgage by the Henons to the Price Estate, the subsequent conveyance of the premises by the Henons to the corporation under and subject to the mortgage, the foreclosure and sheriff's sale of the mortgaged property and the execution and recording of the sheriff's deed to the Price Estate. On May 7, 1935, the Secretary of Revenue notified the sheriff of Philadelphia County by letter that, since the amount bid at the sheriff's sale was not sufficient to cover the amount of the mortgage debt, the Commonwealth had no claim against the real estate for the unpaid corporation taxes. The letter closed with instructions to the sheriff to disregard the Commonwealth's claim for taxes due by the defendant corporation insofar as it related to the particular execution. Compare *Home Owners' Loan Corporation Tax Case*, 149 Pa. Superior Ct. 440, 27 A. 2d 688. Almost ten years later, viz., on January 18, 1945, the Commonwealth instituted the present scire facias proceeding.

In order not to complicate the broad basic question involved with facts special to the instant case, we shall pass over the evidence which the appellants urge as capable of supporting a finding that the conveyance by the corporation to the Henons was for value and therefore not a straw transaction—a conclusion which the learned hearing judge drew but which the court en banc overruled. Also, we shall assume for present purposes that the representatives of the Price Estate had reason to believe from attendant circumstances that the Henons were straws for the

corporation for the purpose of executing and delivering the bond and mortgage in their individual capacities.

Section 1401 of The Fiscal Code of 1929, as originally enacted, provided that all State taxes, etc., and all public accounts settled against any corporation should be a first lien upon the property and franchises of such corporation from the date of settlement and that, upon a judicial sale of such corporation's property, the Commonwealth's claims should first be allowed and paid out of the proceeds of such sale before any judgment, mortgage or other claim or lien against such corporation. The 1933 amendment of Section 1401 provided, however, that "Where the lien of a ground rent, mortgage, or other lien created by or entered against a predecessor in title to such corporation . . . is discharged by a judicial sale, the lien of the Commonwealth shall be transferred from the property sold to the fund realized from the sale, and the purchaser shall take free of the lien of the Commonwealth, notwithstanding that the fund may be insufficient to pay all or part of the same, and, on distribution of the fund, the Commonwealth's lien shall be postponed in payment to said lien or liens created by or entered against such predecessor in title . . . ."

Why, then, was the mortgage of the Henons to the Price Estate not the mortgage of a predecessor in title to the corporation? Indisputably, they were bona fide holders of the legal title to the property by virtue of the corporation's deed of June 17, 1931. If they were not, then the mortgage security which they executed and delivered to the Price Estate for full value was a nullity. But, if the title was validly in the Henons, as it undoubtedly was, from June 17, 1931, to the time of their reconveyance of the property to the corpora-

tion on July 11, 1931, they were, *ipso facto,* predecessors in title to the corporation when they gave their mortgage to the Price Estate. To hold otherwise would require reading something into the amendment of 1933 that is not there. Incidentally, it was more than a year after the lien of the Henons' mortgage had attached before the State tax was settled against the corporation. See *Scranton Lackawanna Trust Co., to Use v. Scranton Lackawanna Trust Co., Guardian,* 310 Pa. 125, 129, 165 A. 42, and *Davis v. Seltzer,* 313 Pa. 382, 383-384, 169 A. 761.

In *Curran's Estate,* 312 Pa. 416, 421, 167 A. 597, Mr. Justice LINN, speaking for this court, said that the fact that a mortgagor was a straw man for a corporation was immaterial to the validity of the mortgage. The learned justice then went on to say, "The important question is, is there a mortgage of real estate, a real security? Ulrich's [the straw man's] mortgage exists. The terms of the mortgage, as well as the obligation in his bonds, are enforcible, the one against the land, the other against him." Plainly enough, that was so because the straw man was the valid holder of the legal title at the time of the execution and delivery of his mortgage.

In *Aronson v. Heymann,* 56 Pa. Superior Ct. 501, a conveyance was made to a straw grantee who gave to agents for the grantor his bond for a portion of the purchase price secured by his mortgage of the premises which he then conveyed to the real purchaser "under and subject to the payment of the mortgage debt." Payment of the principal debt having been defaulted, the mortgage was foreclosed with due notice to the mortgagor's grantee as terre-tenant and a deficiency judgment was entered against the straw mortgagor on his bond. The straw man paid the judg-

ment against himself and then sued his grantee to recover the amount of his loss. The facts being undisputed, the court below gave judgment for the plaintiff for want of a sufficient affidavit of defense. On appeal, the Superior Court affirmed, holding that the straw mortgagor had a right to indemnity from his grantee (the real party in interest) for his loss on the principle that a grantor who conveys under and subject to a mortgage is entitled to indemnity from his grantee against loss suffered by reason of the grantor's personal liability on his bond. The effect of the Superior Court's ruling was to confirm that the straw grantee had valid legal title to the property when he mortgaged it and, consequently, he was entitled to the protection given any other titleholder who conveys subject to a mortgage. Here, again, the actuality of a straw man's title to realty, with all of its legal implications, was recognized and fully respected.

There is nothing legally, or even morally, wrong with a straw transaction which is utilized to effectuate a legitimate purpose. Such arrangements are by no means infrequent. In the instant case, it is conceded that there was neither fraudulent intent nor design on the part of anyone to the transaction. The loan applied for by the Henons, if made, was to be made by Pennsylvania fiduciaries from trust funds in their keeping. At the time of this transaction (1931), Article III, Section 22, of the Pennsylvania Constitution prohibited legislative authorization of investments by fiduciaries in the bonds or stock of any private corporation. According to then current opinion, a corporate bond secured by a mortgage to a trustee for the benefit of the bondholders was not considered a legal investment for Pennsylvania trust funds. It was not until the decision of this court in *Maroney's Estate,* 311 Pa. 336, 166 A. 914, in 1933 that

such an investment was established as legal for fiduciaries.[1]

For support of its ruling in the instant case, the learned court below relied on the opinion of the Court of Common Pleas of Philadelphia County in *Commonwealth v. Corner Realty Co.*, 41 D. & C. 236, from which it quoted approvingly as had also the Court of Common Pleas of Lackawanna County in *Commonwealth v. City Realty Co.*, 56 D. & C. 156. The *Corner Realty Co.* case, supra, was the genesis of the idea that a straw grantee of a corporation for the purpose of mortgaging the property for a proper corporate use is not a predecessor in title to the corporation in relation to its reacquisition of the property from the straw. Certain it is that the rationale of that decision did not stem from anything contained in the 1933 amendment of Section 1401 of The Fiscal Code of 1929. A reading of the opinion in the *Corner Realty Co.* case impresses that it was chiefly an expression of moral indignation that a lien of the Commonwealth for subsequently settled State taxes could be junior to the lien of a prior encumbrance placed by a straw grantee. Thus, the court spoke of the corporation's conveyance to the straw man as a "device [capable] of evading liability for corporate taxes imposed upon the real and corporate owner." But, this is not a case of either tax collection or tax evasion. True enough, behind the lien here involved is the Commonwealth's claim for some unpaid taxes; but, the question with which this case is concerned is the construction of a statute providing for the priority of the Commonwealth's liens *under certain circumstances.*

---

[1] By amendment of Article III, Section 22, of the State Constitution, adopted November 7, 1933, the General Assembly was authorized to prescribe "the nature and kind of investments" of trust funds by fiduciaries.

The salutary purpose of the 1933 amendment of Section 1401 of The Fiscal Code of 1929 was to vouchsafe the security interest of a mortgagee who, for value, held a first lien upon real estate later conveyed to a corporation. Without the 1933 proviso, there existed the possibility that a tax lien of the Commonwealth, although junior in time, would, nevertheless, be senior in right to a first mortgage lien if and when the mortgaged property should be sold at judicial sale. The possible hardship in such a situation was palpaable; hence the 1933 amendment. Of course, if a mortgagee's conduct, in circumstances such as are present in the instant case, is motivated by a desire to aid the grantor in evading payment of corporate taxes to become due the Commonwealth, then the transaction could be set aside or at least held ineffectual, as to the Commonwealth's rights, because of the vitiating fraud. But, where the corporate conveyance of realty and the giving of a mortgage thereof are parts of a bona fide arrangement for the corporation's benefit, the lien of the mortgage should be secured to the mortgagee unimpaired, as the 1933 amendment plainly allows. No just purpose will be served by fictitiously denying, subsequently, to the straw holder of the legal title status as a predecessor in title. And, that is especially so where, as here, there were no State taxes settled against the corporation at the time the mortgage lien attached and the full proceeds produced by the encumbrance went into the corporation's treasury forthwith for proper business uses.

The judgment is reversed and is here entered for the defendant terre-tenants.

---

DISSENTING OPINION BY MR. JUSTICE CHIDSEY:

I am constrained to dissent for the reason that the construction placed by the majority upon the 1933

amendment to The Fiscal Code of 1929 subverts the avowed purpose of the Code, to provide revenue by taxation. It is not necessary to add to the facts which have been substantially and fairly recited in the majority opinion. Moreover, I fully subscribe to the basic question involved, as set forth therein: ". . . whether a straw man, to whom a corporation conveys its property for the purpose of having him mortgage it to secure a loan for the corporation's use and who thereafter reconveys the property to the corporation, subject to the mortgage, is a predecessor in title within the meaning of Section 1401 of The Fiscal Code of 1929, P. L. 343, as amended by the Act of June 3, 1933, P. L. 1474, 72 PS §1401.".

The exception engrafted upon the Act of 1929 by the amending provision of 1933 was obviously a legislative adoption of the decisional law first promulgated in *Sweeney v. Arrowsmith,* 43 Pa. Superior Ct. 268, and later followed by this Court in *Davis v. Seltzer,* 313 Pa. 382, 169 A. 761. Under The Fiscal Code and decisions of this Court, tax claims of the Commonwealth and a lien therefor upon settlement of the taxes due, took priority over the lien of a mortgage upon a judicial sale even though the unpaid taxes accrued after the recording of the mortgage. This was patently unfair to a mortgagee who had loaned money in good faith to a predecessor in title of the corporation, with no knowledge or foreseeability that his mortgagor was not really borrowing for his own benefit but obtaining the loan for a corporation. This was recognized by the Superior Court in *Sweeney v. Arrowsmith,* supra, which adopted the opinion of the eminent President Judge ENDLICH of Berks County who held that it would be repugnant to a clear dictate of natural justice to hold a mortgagee responsible for the obligations of one with whom it had no dealings what-

soever, and that consequently the mortgage lien should be accorded precedence over a tax lien where the mortgagee could not foresee or actually contemplate an eventual transfer of the mortgaged premises to a corporation. The reasoning underlying this holding is found at p. 270 of the Court's opinion: ". . . It cannot be reasonably supposed, therefore, that one selling land to an individual and taking a mortgage upon it from him for part of the price should foresee or actually contemplates the eventuality of its passing at some future time into the hands of a corporation— a failure of that corporation to pay its state tax upon capital stock—and the impairment, possibly the wiping out, of the security for the unpaid purchase money by the enforcement of a lien filed therefor by the commonwealth and taking precedence of the mortgage.".

In *Harper v. Consolidated Rubber Co.,* 284 Pa. 444, 131 A. 356, the rule laid down in *Sweeney v. Arrowsmith,* was held inapplicable since the mortgagee in the *Harper* case was dealing with the corporation. This Court, speaking through Mr. Chief Justice MOSCHZISKER, held that where a purchase money mortgage is taken directly from a corporation, the mortgagee takes it with notice of the Act and knows that the Act in express terms gives preference to the Commonwealth for State taxes which might in the future be assessed against the mortgagor. We must assume in construing that part of Section 1401 in which we are particularly interested that the Legislature had in mind the decisions of the appellate courts and that the purpose of the 1933 amendment was to eliminate the hardship that resulted under a situation similar to that presented in the *Sweeney* case. See *McBride et al. v. Rome Township,* 347 Pa. 228, 231, 32 A. 2d 212. Construing the 1933 amendment in the light of these prior decisions, I think it apparent that the

Legislature, interested in tax receipts by the Commonwealth, did not intend to accord a mortgage lien a superior status where the one asserting the lien was put on notice that the individual mortgagors were merely straw parties to the transaction and a corporation was the real party in interest. Assuming for purposes of this dissenting opinion, as the majority opinion does, that the terre-tenants had reason to believe that the Henons were straws for the corporation, the answer to the question posed by the majority, viz., "Why, then, was the mortgage of the Henons to the Price Estate not the mortgage of a predecessor in title to the corporation?" is, in my opinion, perfectly obvious.

That legal title was in the Henons at the time the loan was given and that they therefore come within the literal meaning of the term "predecessor in title" cannot be questioned. However, the amendment must be construed with reference to the object intended to be accomplished by it in connection with the avowed purpose of the Code, and this is so even to the extent of restraining the meaning of general terms in order to clearly interpret the spirit and reason of the enactment: *Null v. Staiger,* 333 Pa. 370, 376, 4 A. 2d 883. Since the 1933 amendment had as its purpose the prevention of an injustice, where the loan is made with notice that the corporation is the real mortgagor, the concept of injustice or possible hardship readily disappears, for the party taking the mortgage does so with full knowledge that the property will eventually pass into the hands of the corporation, and that the Commonwealth could in the future settle State taxes against the corporation and thereby completely wipe out the mortgagee's security if the corporation were unable to pay.

I attach no significance to the fact noted by the

majority that ". . . it was more than a year after the lien of the Henons' mortgage had attached before the State tax was settled against the corporation.", calling attention to the cases of *Scranton Lackawanna Trust Co., to use, v. Scranton Lackawanna Trust Co., Guardian,* 310 Pa. 125, 129, 165 A. 42 and *Davis v. Seltzer,* 313 Pa. 382, 383-384, 169 A. 761. The terretenants in the instant case would have no standing to complain on this ground for, in my view of the amendment, they are in the same position as the mortgagee in the *Harper* case, knowing full well that by the express language of the Act of 1929 their security was postponed to State taxes which might be assessed against the corporation in the future. In the *Scranton* case there was no statute then in effect according precedence to the Commonwealth's tax lien and in the *Davis* case the original mortgagor had no connection with the corporation either before or after the execution of the mortgage. In the *Harper* case, *Schover et al. v. Comet Oil & Refining Co.,* 284 Pa. 189, 130 A. 413, was cited with approval and quoted therefrom as follows: ". . . 'Our first thought must always be the preservation of government [and the] enforcing of lawful means necessary to successfully carry it forward; the means should always be available for its continued security, not hindered or prevented by lesser rights which may suffer because of such enforcement. The common good is superior to individual or private rights; [the State] therefore has a *natural equity* [and is] fairly entitled to first rank in the list of claims that may be had against any or all property. The protection which individuals receive at the hands of the government is compensation for any so-called impingement of right.' . . .".

The majority opinion, in referring to the letter from the Secretary of Revenue notifying the sheriff

that the Commonwealth would have no claim against the mortgaged premises, cites the *Home Owners' Loan Corporation Tax Case*, 149 Pa. Superior Ct. 440, 27 A. 2d 688. This case, which involved local taxes, stands for the proposition that where a public official charged with the duty of collecting delinquent taxes, is obliged to furnish the owner of the real estate with a correct and complete statement of taxes certified to him for collection, the payment of all taxes contained in such a statement is a discharge of the real estate from liability for taxes due and payable.

While it is ordinarily true that where a landowner attempts in good faith to pay taxes but is led to believe that the taxes had been paid through the inadvertence, mistake or neglect of the receiving officer, the attempted payment is equivalent to actual payment, that principle has no application to the facts of this case. In the instant case the Secretary of Revenue did not certify that the taxes were paid, but on the contrary the letter clearly disclosed that taxes were due. The statement in the letter that the Commonwealth of Pennsylvania would have no claim against the real estate for corporate taxes since the amount bid at the sale was not sufficient to cover the amount of the judgment, was a misapprehension of the law by the Secretary of Revenue which in no way binds the Commonwealth. The Commonwealth's lien for capital stock taxes against the real estate of a corporation is not divested by a sheriff's sale, which realizes a sum insufficient to pay any part of the taxes: *Commonwealth v. Lowe Coal Co.*, 296 Pa. 359, 145 A. 916. A state as the sovereign is not estopped by the errors, misinformation or laches of its officers or agents from collecting taxes legally due. An administrative officer or body exercising discretion conferred by the Legislature is not vested with the power

to abrogate the statutory law of the Commonwealth: *Commonwealth v. Western Maryland Railway Company*, 377 Pa. 312, 321, 322, 105 A. 2d 336; *Commonwealth v. A. M. Byers Company*, 346 Pa. 555, 560, 31 A. 2d 530.

For the reasons stated, I would affirm the judgment of the court below.

Mr. Chief Justice STERN joins in this dissent.