**In re UNIVERSAL MINERALS, INC., a Pennsylvania corporation, and Cambria Mining & Manufacturing Company, a wholly owned subsidiary, Debtors.**

**Bankruptcy No. 78–696.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 21, 1982.

---

**6.** 1973 Op.Att'y Gen. No. U73–82.

800

I. Samuel Kaminsky, Johnstown, Pa., for trustee.

Thomas A. Swope, Jr., Ebensburg, Pa., for Johnstown Bank and Trust.

Myron I. Markovitz, Johnstown, Pa., Dino S. Persio, Rosemary Persio, Francis Mardula, Ebensburg, Pa., Samuel D. Clapper, Somerset, Pa., Samuel F. Rizzo, Johnstown, Pa., John W. Taylor, Ebensburg, Pa., Sanford M. Lampl, Pittsburgh, Pa., for debtor-in-possession.

David P. Helwig, Leroy L. Lewis, Jr., Ronald Werhnyak, Edmund S. Raffin, III, Pittsburgh, Pa., for Republic Steel.

Donald A. Brown, Harrisburg, Pa., for Com. of Pa., Dept. of Environmental Resources.

Kenneth P. Simon, Pittsburgh, Pa., for Bethlehem Corp.

Melvin Caplan, Atty. Gen., Pittsburgh, Pa., for Com. of Pa.

Henry Gusky, Pittsburgh, Pa., for United Mine Workers.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

This case arises under the former Bankruptcy Act. The principal issue before the Court is the distribution of funds produced from the sale of secured assets of the Debtor.

## STATEMENT OF PERTINENT FACTS

Universal Minerals, Inc. ("Universal") filed for protection under Chapter XI of the Bankruptcy Act on October 27, 1978. One of its assets was the stock of its wholly owned subsidiary, Cambria Mining and Manufacturing ("Cambria").

In April of 1981, Thomas C. Light was appointed as Trustee of this estate and ordered to bring about its orderly liquidation. Republic Steel Corporation ("Republic") holds a second mortgage and is secured in the assets of Cambria. Combined assets are largely real estate and minerals. Laurel National Bank ("Laurel") claims to be secured in the property of Universal. Universal's property consists mainly of personalty.

Republic brought its first action to lift the stay in December of 1979. Relief was denied initially because Republic's evidence failed to show that it was inadequately protected. At a later date Republic renewed its request and relief was denied pending the expected sales of the assets of the Debtor. These negotiated sales did not develop. The Trustee's proposed sale of the assets took place on January 26, 1982. The sale was conducted in two parts. Republic bid $6,750,000.00 for the assets covered by its security. This amount was calculated to pay the first mortgage, its own second mortgage and limited cost of the sale.

The assets of Universal were sold separately to L & L Coal Company.

On February 13, 1980 as a form of protection, Republic was granted an interest in the royalty payments that were being received by the Debtor from the contract mining of the property. These royalty payments were properly paid to Republic through 1981. No payments have been made in 1982. The payments accrue at an approximate rate of $15,000.00 per month. Republic claims a secured interest in these payments also.

## DISCUSSION

One of the issues before the Court is whether the fund created by Republic's bid can be used to pay the general administrative expenses of the estate incurred since the filing of the bankruptcy petition or whether that fund is liable only for expenses incurred in connection with the sale and for preservation of the asset. Republic argues that it should pay only for expenses of the sale and for administrative expenses directly attributed to the preservation of the asset. The Trustee, the Debtor's attorney, the United Mine Workers of America Health and Retirement Funds and Bethlehem Mines Company, who have large administrative claims, take the opposite position.

Also at issue in this case is the claim of the Commonwealth of Pennsylvania, Department of Revenue, Bureau of Account Settlement (the "Commonwealth") for corporation taxes. The Commonwealth claims a first priority lien ahead of all mortgages for pre-petition corporate taxes owed by Cambria.

Although the issues are similar, in this opinion we do not decide whether Laurel Bank has a valid security interest in the assets of Universal or whether the administrative claims may be paid out of the sale of the Universal assets prior to payment of Laurel's secured claim. That issue has been briefed by the parties and awaits a later opinion by this Court.

## I. *The Administrative Expense Claims*

 The United States Court of Appeals for the Third Circuit has held in a

consistent line of decisions that secured creditors cannot be made to pay general administrative expenses under these circumstances. See *In the Matter of Pioneer Sample Book Co., Inc.,* 374 F.2d 953 (3rd Cir.1978); *In re Street,* 184 F.2d 710 (3rd Cir.1950); *Miners Savings Bank of Pittston v. Joyce,* 97 F.2d 973 (3rd Cir.1938); *In re Torchia,* 188 F. 207 (3rd Cir.1911). In *Pioneer Sample Book Co., Inc.,* the debtor had been converted to a case under Chapter VII after a reorganization pursuant to Chapter XI had been attempted. In the instant case there has been no conversion to a Chapter VII. However, the Trustee's appointment with a mandate to liquidate the estate is an analogous event to a conversion to a Chapter VII. In *Pioneer* the Court stated:

> It is elementary that in a Chapter XI proceeding "only the rights of unsecured creditors of the debtor may be arranged and this without alteration of any other classes of security holders." See *Securities and Exchange Commission v. United States Realty and Improvement Co.,* 1940, 310 U.S. 434, 452, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293. For this reason it has been held that when a Chapter XI proceeding, or a proceeding under the earlier section 77B, has been unsuccessful and has led, with the subsequent consent of the secured creditors, to a liquidation of the insolvent debtor's assets in bankruptcy, the administrative expenses of the attempted arrangement are not a proper charge against the secured creditor's interest in the proceeds of the liquidation. *Miners Sav. Bank of Pittston, Pa. v. Joyce,* 3rd Cir., 1938, 97 F.2d 973; *In re Centralia Refining Co.,* E.D.Ill.1940, 35 F.Supp. 599; *In re Pioneer Sample Books Co., Inc.,* supra, at 958.

This holding is clear and precise. The Chapter XI administrative expenses incurred by a debtor in possession attempting to reorganize cannot be paid from the proceeds of the sale of secured property. In our case the pension expenses for which the UMW seeks compensation accrued from the filing date until about November of 1979 while the Debtor was still attempting to reorganize. The UMW argues that these expenses contributed to the improvement or preservaton of secured property. This alleged benefit has not been established. The facts are not in dispute. These pension expenses accrued from labor expended at the "gob" piles. These labor related expenses did not preserve assets secured by Republic but were related to assets secured by Laurel.

■ These labor activities were expended toward the processing of the gob piles (waste coal) into saleable coal which produced income for the Debtor. The secured assets were actually diminished by the process. Although these expenses are general administrative expenses, they are unrelated to preservation of assets.

■ Additionally, we hold, based on *Pioneer Sample Books Co., Inc.,* that the UMW claim is insufficient as a matter of law. The UMW relies on *In re Hotel Associates, Inc.,* 6 B.R. 108 (Bkrtcy.E.D.Pa.1980) as support for its position. In the *Hotel Associates, Inc.* case, a trustee had been appointed under a Chapter 11 reorganization. The trustee sought the assurance by the Court that despite what might happen in the future the trustee's expenses would be paid. The Court concluded:

> Where, as in the instant case, the sole asset of the debtor is heavily encumbered, and where the holder of the senior secured claim moves the Court to appoint a trustee, such creditor has not only impliedly consented to the trustee's cost and expenses but has insured these costs and expenses will be incurred. The fund [the secured creditor] has clearly decided to "run a risk of loss" in order to make possible a Chapter 11 plan of its own devising. *In re Riddlesburg Mining Co.,* 224 F.2d 834 (3rd Cir.1955). *In re Hotel Associates, Inc.,* supra, at 114.

The facts of *Hotel Associates, Inc.* are very different from the UMW claim. The UMW administrative expenses were not incurred after the appointment of a Trustee. More importantly, with regard to the administrative expense claims made in this case, Republic cannot be said to have initiated an

attempted reorganization by the Trustee and therefore run the risk of loss. Republic consistently sought to lift the stay and pursue its secured property.

The administrative claims of Bethlehem and the Trustee are based on allegations similar to the UMW claim except for the time period. These claims are for expenses incurred after the appointment of the Trustee. The rule in the Third Circuit, which is followed in the *Hotel Associates, Inc.* case, is stated in *In re Pioneer Sample Book Co., Inc.,* supra, as follows:

> On several occasions, this court has imposed upon the proceeds of the sale of liened property some part of the burden of the bankruptcy administrative expenses. *Miners Sav. Bank of Pittston, Pa. v. Joyce,* supra; *In re Torchia,* 3rd Cir., 1911, 188 F. 207; *In re Vulcan Foundry and Machine Co.,* 3rd Cir., 1910, 180 F. 671. However that obligation is limited. In *Miners Sav. Bank of Pittston, Pa. v. Joyce,* supra, we ruled that:
>
> " . . . where a trustee sells a bankrupt's property free of liens, with the consent of the lienholders, the latter are chargeable not only with the actual costs of sale but also with expenses reasonably incurred in the preservation of the property, *Virginia Securities Corporation v. Patrick Orchards,* 4 Cir., 20 F.2d 78, and with the trustee's and referee's commissions with respect to the proceeds of the sale, *Tawney v. Clemson,* 4 Cir., 81 F.2d 300, but with no other expenses of administration, except with their consent, express or implied, *In re Torchia,* 3 Cir., 188 F. 207." 97 F.2d at 977.

The question then becomes whether it can be said Republic consented, either expressly or impliedly, to the sale.

Republic asserts that no such consent was given nor can it be implied from the record in this case. The Court agrees. In the year between the filing of the petition in this case and Republic's filing of its Complaint for Relief from Stay in December of 1979, Republic was active in attempting to preserve its collateral. On November 7, 1978,

this Court entered an Order requiring the Debtor to keep its mortgage payments current. On January 31, 1979, this Court signed an Order permitting the Debtor an extension of time in which to file a plan of arrangement. This was extended to March 15, 1979. On September 18, 1979, the Debtor filed an Application to Approve Agreement Granting Exclusive Rights to Submit Plan of Arrangement, Arrange for Funding and Receive Stock Interest on Behalf of Coal Mining Holding Corporation, Limited ("CMC"). This was approved by the Court on the same day. The Order gave CMC the exclusive right until October 31, 1979 to file a plan of arrangement on behalf of the Debtor if CMC determined it would be worthwhile. On November 2, 1979, the time to file a plan of arrangement was extended until December 31, 1979. On February 11, 1980, a Stipulation was filed with the Court in which Republic agreed not to pursue its Complaint for Relief from Stay filed in December of 1979, if a private buyer was obtained on or before June 30, 1980 and a sale held on or before August 31, 1980. This private buyer was never obtained and in October of 1980 this Court denied Republic's Complaint for Relief saying that on the evidence before it Republic was adequately protected. On November 26, 1980, the Court entered an Order stating it would appoint a liquidating trustee upon the occurrence of certain events, and on April 23, 1981 Thomas E. Light was appointed liquidating Trustee. A sale was held in July of 1981, but the price bid at the sale was rejected by this Court as inadequate. A second sale set for November 18, 1981 was continued to January 26, 1982.

This record does not demonstrate that Republic consented to reorganization as the secured creditor did in *Hotel Associates, Inc.* Nor does it show that Republic consented to the sale. What it does show is that Republic bid at the sale to protect its mortgage. Under the analysis of *Pioneer Sample Book Co., Inc.,* the administrative expenses in April of 1981 have no priority over Republic's mortgage. The record further reveals that the sale was in fact a sale

in lieu of foreclosure. Under these circumstances, the Court finds that only those expenses directly related to preserving the property and for expenses of the sale can have priority above the mortgage of Republic.

■ Republic and the Trustee have agreed to limit Republic's liability for payment of such expenses of administration, which will be allowed by this Court to $150,000. The Court finds that that settlement is reasonable and equitable. The Court finds that those expenses must be for costs of sale and for preservation of the assets of Cambria. The Court does not decide here to whom this fund should be distributed.

■ The Court further agrees to the proposed settlement of Republic's secured claim in the fund held by the Trustee and limits that amount to $60,000.00 if Republic can demonstrate that it has remaining at least $60,000.00 in mortgage obligations owing for its mortgage.

## II. *The Commonwealth Tax Claim*

The Commonwealth admits that its tax claim against Republic on the property is limited to the pre-petition corporate taxes that were "settled" against Cambria. The amount of the claim is $56,695.74. The Court must now determine whether that amount has priority above Republic's security and therefore must be paid by Republic to the Commonwealth.

The Commonwealth relies for its priority on 72 P.S. Section 1401, which states:

All state taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, and unpaid bonus, penalties and all public accounts settled, assessed or determined against any corporation, association, or person including interest therefore, shall be a first lien upon the franchises and property, both real and personal, of such corporation, association, or person, from the date of settlement, assessment or determination. . . .

The Commonwealth alleges that the Debtor has failed to remit monies due and owing the Commonwealth of Pennsylvania on taxes imposed by Article IV Tax Reform Code of 1971, as amended, 72 P.S. Section 7401 (corporate net income tax); Article VI, Tax Reform Code of 1971, as amended.

■ It is well settled that an assessment by the Commonwealth for corporate taxes becomes a lien on the property of that corporation with priority over a pre-existing mortgage. See *In re Regal Petroleum Products Co.*, 287 F.Supp. 458, 460–461 (1968), *aff'd per curiam*, 413 F.2d 299 (3rd Cir.1969); *Commonwealth v. Hoffman-Henon Co.*, 382 Pa. 213, 114 A.2d 92 (1955); *Commonwealth v. Central Realty Co.*, 338 Pa. 172, 179, 12 A.2d 312, 315 (1940). The Court finds no authority to the contrary. Republic desires an opportunity to contest the amount of the Commonwealth's claim. Republic should not be bound by the inaction of an insolvent Debtor who did not contest the validity of the original tax settlement. To do so would be to deny Republic the basic elements of due process. *In re Century Vault Co.*, 416 F.2d 1035, 1041 (1969). Therefore, another hearing to determine the amount of the Commonwealth's claim will be ordered.

An appropriate Order will issue.