City of Uniontown *v.* McGibbons et al.

Argued April 18, 1934.

Before Trexler, P. J., Keller, Baldrige, Stadtfeld, Parker and James, JJ.

*E. C. Higbee* of *Higbee, Matthews & Llewellyn,* for appellant.

*W. F. Lane,* City Solicitor, for appellee.

OPINION BY STADTFELD, J., October 11, 1934:

The question for consideration in this appeal is whether the lien of appellee's municipal claim for grading, paving and curbing the street upon which the premises abut, filed under the provisions of the Act of May 16, 1923, P. L. 207 (P. S. Title 53, Section 2021 et seq.) was divested by the sale of the premises by the county treasurer in June, 1930, on account of the non-payment of taxes levied thereon for and during the year 1928.

Certain lands, situate in the City of Uniontown, were duly assessed in the name of C. P. McGibbons. A county tax for 1928 was regularly levied February 4, 1928; a city tax for 1928, January 17, 1928; and a school tax for 1928, May 25, 1928. The taxes not having been paid, they were duly returned on January 31, 1929.

The treasurer, on June 10, 1930, regularly sold it to Robert E. Umbel, appellant, for the exact amount of the taxes, $102.49, which was duly paid. The land not having been redeemed within two years, a deed was made by the treasurer to Umbel, the purchaser.

On May 12, 1928, the City of Uniontown filed a municipal claim in the sum of $1,454.18, for improving and paving a, street on which the land abutted. The improvement was completed November 15, 1927, from which date interest was claimed. A scire facias on this claim was issued May 4, 1933.

On August 15, 1933, Umbel, the purchaser, filed a petition for a rule to show cause why the municipal claim had not lost its lien and why it should not be stricken off. After argument before the court en banc, the petition was dismissed in an opinion by MORROW, J. From that order, Umbel, the purchaser, took this appeal.

A brief reference to the history of the legislation relating to the sale of land to enforce the payment of taxes, will afford some light in the interpretation and application of the statutes governing this case.

The Act of June 4, 1901, P. L. 364, undertook to establish a complete and exclusive system in itself, so far as relates to the practice and procedure for the filing, collection and extent of tax and municipal claims levied upon seated lands. The procedure under the Act of 1901 was found to be unwieldy, burdensome and expensive. It was followed by the Act of May 21, 1913, P. L. 285, providing for the return and sale of seated lands, on which there could not be found sufficient personal property to pay the taxes, "by the proper county treasurer, at the time and in the same manner, and under the same conditions, and with the same effect, as unseated lands are now sold by such county treasurer for unpaid county taxes." This act was held in Bradford County v. Beardsley, 60 Pa. Superior Ct. 478, to repeal the Act of June 4, 1901, P. L. 364, in so far as it relates to return of taxes on seated lands and the sale of the lands for non-payment of county, poor, borough, town or township taxes: (482) "The Act of 1913 furnishes practically

the same system that was in existence prior to the Act of 1901 and as was held in Day v. Swanson, supra, (236 Pa. 493) the Act of 1901 would be inconsistent with the provisions contained in the Act of 1913 and the latter, therefore, must effect a complete repeal of the Act of 1901 in so far as it relates to the question of *procedure* in enforcing the collection of delinquent taxes.'' (Italics supplied.)

The Act of 1901, supra, under Section 2, made all taxes a first lien and gave them priority in payment out of the proceeds of any judicial sale. Section 32 provides in part that the lien of a tax or municipal claim shall not be divested, by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; nor shall a judicial sale of the property liened, under a judgment obtained on a tax or municipal claim, discharge the lien of any other tax or municipal claim than that upon which such sale is had, except to the extent that the proceeds realized are sufficient for its payment, after paying the costs and expenses of the sale and of the writ upon which it was made, and any other prior tax or municipal claims to which the fund may first be applicable etc. Section 32, as further amended by the Act of May 28, 1915, P. L. 599 was re-enacted as Section 31 of the Act of May 16, 1923, P. L. 207, which re-enacted, with some changes, immaterial for present consideration, the Act of 1901.

Section 3 of said Act of 1923 provides that all municipal claims are declared to be a lien on the property on which imposed or assessed, and shall have priority and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other claim or lien etc., save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property. Section 15 of said Act of 1923, provides in part that

"such tax, municipal, or other claim, if filed within the period aforesaid, shall remain a lien upon said properties until fully paid and satisfied," if the appropriate proceedings are had to keep the lien alive.

Section 31 of the Act of 1923, provides in part as follows: "The lien of a tax or a municipal claim shall not be divested by any judicial 'sale of the property liened, where the amount due is indefinite or undetermined, or where the same is not due and payable; nor shall the lien of a tax or municipal claim be divested by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; nor, except as hereinafter provided, shall a judicial sale of the property liened, under a judgment obtained on a tax or municipal claim, discharge the lien of any other tax or municipal claim than that upon which sale is had, except to the extent that the proceeds realized are sufficient for its payment, after paying the costs and expenses of the sale, and of the writ upon which it was made, and any other prior tax or municipal claims to which the fund may first be applicable. ......" Under this section provision is also made, in case the property is not sold for a sum sufficient to pay all taxes and municipal claims together with costs thereon, the plaintiff may upon petition to court with proper notice to interested parties, obtain an order for sale whereby "an absolute title to the property sold [may be acquired] free and discharged of all tax and municipal claims, liens, mortgages, charges and estates of whatsoever kind, subject only to the right of redemption as provided by law."

Under Section 41 of the Act of 1923, the Act of June 1, 1915, P. L. 660, is saved from repeal, but otherwise all acts, or parts of acts inconsistent therewith are repealed, the expressed intention being to furnish a

complete and exclusive system in itself, so far as relates to tax and municipal claims.

It will thus be seen that both under the Act of 1901, as well as under the Act of 1923, the lien of a municipal claim was preserved from divestiture, except to the extent it might be paid out of the proceeds of any judicial sale, and postponed in priority of payment, only to the costs of the sale and the writ on which made, and taxes.

It is contended by appellants that by reason of the amendment by the Act of 1913 and the further amendment of 1915, providing for the sale of seated land for taxes "with the same conditions and effect, as unseated lands," the municipal claim in the instant case was divested.

The title of the act of 1913 reads: "An act providing for the return of taxes on seated lands in counties, poor districts, boroughs, incorporated towns and townships, for county, poor, borough, town or township taxes, respectively; and providing for the sale of such lands for taxes."

The title does not disclose any intent to change any provision of the substantive law regulating the time of attaching, or the duration and extent of the lien for taxes; or the relationship between the several liens to which the seated lands may be subject; nor does it give any notice that it proposes to change the existing law preserving liens from divestiture by such sales, nor any other provisions of the substantive law.

The body of the act itself does not disclose any intent to effect a change in the existing substantive law, unless the phrase "with the same effect" can be held to have wiped out all of the distinctions between sales of seated and unseated lands, and effects and incidents of such sales that had always been recognized, and carefully and painstakingly preserved and delineated by the legislature in all prior legislation.

138

From the clause saving the Act of 1915 from repeal, it is urged that the legislature must be taken to have intended to make the substantive provisions of the act wholly dependent upon the *procedure* adopted for the collection of taxes, and to leave the effect of treasurer's sales of seated lands exactly as provided by the Act of 1815 for unseated lands. It must be remembered that the Act of 1913, as amended by the Act of 1915, did not amend the substantive provisions of the Act of 1901. It was a procedural act solely, as stated in Bradford County v. Beardsley, supra. So regarded, its meaning is perfectly clear.

Sections 3, 15 and 31 of the Act of 1923 expressly and specifically preserved the lien of a municipal claim and gave priority in distribution except as to costs and taxes. The title of the Act of 1923 clearly sets forth its purpose, and shows that the part of the forty-first section specifically saving the Act of 1915 from repeal, was designed to emphasize the general statement contained in the same section that "nothing contained in this act shall be construed to repeal or affect the validity of any other acts of assembly providing other methods or remedies for the collection of taxes and municipal claims."

It is inconceivable that the legislature, in enacting the Act of 1923, after carefully and in detail providing for the status of municipal claims, intended by a portion of section forty-one, saving the Act of 1915 from repeal, to nullify all the preceding paragraphs in the same act. We cannot agree with this contention of appellant.

The Act of 1923 was followed by the Act of 1929, P. L. 1684. It in express terms repealed the Act of May 21, 1913 and its amendments which includes the Act of 1915.

The court below found that the sale in the instant case was under the Act of May 9, 1929, P. L. 1684, en-

titled "An act authorizing and empowering the county treasurers of the several counties of this Commonwealth to sell at public sale all seated lands upon which taxes assessed on such seated lands by authority of any county, borough, town, township, school district, and poor district are delinquent and remain unpaid, and fixing penalties for such delinquency; authorizing county commissioners to purchase such lands under certain circumstances." This act specifically preserves the act approved the 16th day of May, 1923, P. L. 207.

Appellant contends that the said Act of 1929 was prospective only, and did not apply to taxes returned before its passage, and that notwithstanding the express repeal of the Act of 1915, supra, the latter act still survived and applied so far as the instant case is concerned and cites in support of the latter position Bradford County v. Beardsley, supra; Keystone S. B. & L. A. v. Butterfield, 74 Pa. Superior Ct. 582, and Com. v. Mortgage Trust Co., 227 Pa. 163. Even if the Act of 1929 does not apply, and the sale were made under the Act of 1915, under the views expressed, supra, the lien under the Act of 1923, which was expressly saved from repeal, was not divested.

Appellant, however, contends that the sale in the instant case was not a "judicial sale." The procedure on any tax or municipal claims, under the Act of 1923, is under the control of the court. Any sale thereunder is subject to confirmation by the court. It is the power of the court, therefore, which controls and gives validity to the sale. It does not differ in any respect from other judicial sales. As stated by Mr. Justice SIMPSON, in Tide Water Pipe Co. v. Bell, 280 Pa. 104, 117 (124 A. 351): "We find nothing in these cases to cause us to differentiate a tax sale from other judicial sales."

As to what is a judicial sale has been fully discussed

by our Brother BALDRIGE in the case of City of New Castle v. John Whaley's Heirs, 102 Pa. Superior Ct. 492, 496 (157 A. 503): "A judicial sale is defined by Rapalje and Lawrence, Vol. 1, page 699, as 'a sale under the judgment, order, or decree of the court; a sale under judicial authority, by an officer legally authorized for the purpose, such as a sheriff's sale, an administrator's sale, etc.' Bouvier, Vol. 2, page 1754, Rawle's Third Edition, gives as a definition: "A sale, by authority of some competent tribunal, by an officer authorized by law for the purpose.' ". See also Borough of State College v. Pontius, 112 Pa. Superior Ct. 440, 171 A. 293.

In Lee v. Newland, 164 Pa. 360, it was held that a deed from a county treasurer, for land sold at a tax sale, is not valid to pass title without acknowledgment in open court and a record of the, acknowledgment in the minutes of the court; that the acknowledgment of a tax deed is a *judicial act* which must be done in open court, and that the minutes of the court are the only proper evidence of the acknowledgment.

In Osmer v. Sheasley, 219 Pa. 390 (1908), the same doctrine was again announced by the Supreme Court in an opinion by Mr. Justice MESTREZAT, wherein he quotes from the opinion by Mr. Justice SHARSWOOD in Hoffman v. Bell, 69 Pa. 444, p. 451: " 'But for reasons which appealed to the legislature, it was thought that the acknowledgment of the deed should be in open court and that thereby the sale should receive *judicial sanction*. In that way the acknowledgment of the deed, conveying title to real estate, would be placed upon the records of the court. This would afford easy and absolute proof of the existence of the deed and the conveyance of the real estate to the purchaser. *It would give the latter's title judicial sanction* as well as perpetually preserve the evidence of it. This enactment, requiring the acknowledgment of a treasurer's deed

to be in open court as a prerequisite to a valid tax title, has met the approval of the people of the Commonwealth for more than a century. Its wisdom commends itself to lawyers and laymen alike, and, while subsequent legislatures have amended the statute in many respects, they have never changed or altered this provision.' '' (Italics supplied.)

The law requiring a treasurer's sale to receive the approbation of the court before it shall be binding or valid to pass the title, in effect makes the sale the act of the court; hence the propriety of denominating such a sale a ''judicial sale.'' See Noland v. Barrett, 122 Mo. 181, 26 S. W. Reporter 692.

We see no error in the conclusion arrived at by the lower court.

The assignments of error are overruled, and the order of the lower court is affirmed at the costs of the appellant.