## Odabashian v. Baker

490

*Harry C. Liebman* and *Howard Richard*, for plaintiffs.

*Triest Capriotti* and *Thomas D. McBride*, Attorney General, for Commonwealth.

*George B. Clothier* and *Obermayer, Rebmann, Maxwell & Hippel*, for Title Insurance Company of Pennsylvania, intervenor.

SWENEY, P. J., March 28, 1958.—This matter comes before the court en banc, with excellent briefs, upon plaintiffs' petition to show cause why they should not be paid in full by the Sheriff of Delaware County from funds raised on sheriff's sale, thereby reducing the amount claimed by the Commonwealth of Pennsylvania, rising from a lien filed by the Department of Labor and Industry, to the use of the Unemployment Compensation Fund.

Plaintiffs, holders of a second mortgage on premises located at the southeast corner of Union and Baltimore Avenues, Upper Darby Township, this county, brought an action of foreclosure, entered judgment and assessed damages for $9,906.19 and, thereafter, sold said premises, at sheriff's sale, for the sum of $13,500, subject to a first mortgage.

After the purchase money was deposited with the sheriff, a sheriff's distribution policy was ordered from the Title Insurance Corporation of Pennsylvania, to determine the distribution of the amount raised on execution. The proposed distribution is as follows:

"$135.00 Transfer Tax on Deeds due the Commonwealth of Pennsylvania

"$315.85 Sheriff's Costs.

"$727.13. 1956 Real Estate Taxes due Thomas J. Gamble, County Treasurer

"$10.91 1956 Sewer Rental due Township of Upper Darby

"$236.90 1957 Township Real Estate Taxes due Township of Upper Darby

"$88.59 1957 County Real Estate Taxes due Township of Upper Darby

"$10.00 1957 Sewer Rent due Township of Upper Darby. (Note: School Real Estate Tax for 1957 is not included herein, since the rate for same has not been set as of date of sale.)

"$1,835.99 Amount due Commonwealth of Pennsylvania, Department of Labor and Industry, to use of Unemployment Compensation Fund on the following judgments vs. George H. Baker, individually and t/a Howard Cleaners, viz: (1) Entered 7/18/1956 of June Term 1956 No. 983; (2) Entered 8/30/1956 of June Term, 1956 No. 1969 and (3) Entered 4/24/1957 of March Term 1957 No. 1247. (Contact Mr. Stewart Flood, Superintendent of Field Accounting Service, Bureau of Employment Security, 11th St. and Elsinore Place, Chester, Pa.—Phone No. Chester 3-8157).

"$717.09 1954 Real Estate Taxes due Thomas J. Gamble, County Treasurer

"$713.05 1955 Real Estate Taxes due Thomas J. Gamble, County Treasurer

"$11.54 1955 Sewer Rent due Township of Upper Darby

"$8,697.95 Amount allowed on Selling Judgment, Minas Odabashian and Karnig Keshgegian vs. George H. Baker, mortgagor and real owner and the United States of America, entered 3/13/1957 of December Term 1956 No. 319 (being the amount of damages assessed of $9906.19 plus interest and costs computed by Sheriff's Office of $109.75, total $10,015.94 less deficiency allowed for payment of claims having priority) (Attorneys of record—Harry C. Liebman—Howard Richards)

"Subject to additional interest and/or penalties if distribution is made after August 31, 1957."

Plaintiffs assert the proposed order of distribution is incorrect in that priority is accorded the Commonwealth of Pennsylvania, Department of Labor and Industry, to use of Unemployment Compensation Fund, over their judgment, and that their claim should be fully paid from the proceeds in possession of the sheriff ahead of this claim by the Commonwealth. Three reasons are advanced in support of this contention: (1) The liens or judgments of the Commonwealth of Pennsylvania are predicated upon unpaid unemployment contributions due by George H. Baker, one of the defendants; (2) said liens or judgments were filed on July 18, 1956, August 30, 1956, and April 24, 1957, respectively, long after the recording of plaintiffs' mortgage; (3) said liens or judgments are expressly made subject to the lien of the aforesaid preëxisting duly recorded mortgage of plaintiffs under the terms of Unemployment Compensation Law of December 5, 1936, P. L. (1937) 2897, as amended May 23, 1949, P. L. 1738, sec. 7, 43 PS §788.1.

The factual situation giving rise to the present question is undisputed. There are certain Federal

liens and a private judgment admittedly subordinate to the aforementioned claims, which do not enter as participants in the proceeds of the sheriff's sale and may be disregarded.

The issue here may be summarized as follows:

Where upon distribution of a fund derived from a sheriff's sale of real estate, there is insufficient money to pay in full claims for local taxes, a mortgage judgment and Commonwealth claims for unemployment compensation contributions, and local taxes rank ahead of the mortgage, and the Commonwealth recognizes only a priority in favor of the mortgage and claims a priority over the local taxes, what is the proper order of distribution?

By the express language in section 308.1 of the Unemployment Compensation Law of 1936, amended by the Act of May 23, 1949, P. L. 1738, 43 PS §788.1, the Commonwealth has subordinated the lien of its unemployment compensation claim to preëxisting real estate mortgages. The section, covering this question, is as follows:

"All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, of the employer liable therefor, from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. Whenever the franchises or property of an employer is sold at a judicial sale, all contributions and the interest and penalties thereon thus entered of record shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid: Provided, however, That the lien hereby created shall not be prior to pre-existing duly recorded real estate mortgages."

The Act of March 21, 1945, P. L. 47, 53 PS §7102, provides for the lien of municipal claims and liens as follows: "All taxes which may hereafter be lawfully imposed and assessed by counties, institution districts, cities, boroughs, towns, townships, and school districts on real property, are hereby declared to be a first lien on such real property (but subordinate to the lien of taxes imposed by the Commonwealth) . . ."

It is firmly established that the Commonwealth has a sovereign right over all creditors if it chooses to exercise that right: South Philadelphia State Bank's Insolvency, 295 Pa. 433, 438 (1929). The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1401, clearly spells out the general supremacy of the tax liens of the Commonwealth in the following language:

"All State taxes . . . shall be a first lien upon . . . property . . . and whenever the . . . property . . . shall be sold at a judicial sale, all taxes, interests, bonus, penalties, and public accounts due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person . . ."; also in the same section, referring to Commonwealth taxes: ". . . but shall not be postponed in payment to local taxes or municipal claims . . ."; to the same purport is the Real Estate Tax Sale Law of July 7, 1947, P L. 1368, 72 PS §5860.301:

"All taxes which may hereafter be lawfully levied on property in this Commonwealth by any taxing district, and all taxes heretofore lawfully levied by any taxing district on any property . . . shall be and are hereby declared to be a first lien on said property. Such liens shall have priority to and be fully paid and satisfied out of the proceeds of any public sale of said property held under the provisions of this act . . . save and except only the costs of the sale and of the proceedings upon which it is made, and tax liens in

favor of the Commonwealth of Pennsylvania, which shall have priority to such tax liens."

Unemployment compensation contributions are recognized as taxes levied by the Commonwealth upon the right to employ, and have priority over other claims under the provisions of The Fiscal Code of 1929, supra: Pittsburgh Petition, 376 Pa. 447, 449, 450 (1954). Conflicting claims of local and Commonwealth taxing authorities have been resolved consistently in favor of the sovereign's superiority. See Westmoreland County v. Westmoreland Brewing Company, 8 D. & C. 378, (1926); Commonwealth v. Phila. Pure Rye Whiskey Distilling Co., 38 D. & C. 245 (1940); Fleetwood Borough's Petition, 52 D. & C. 529 (1945).

As is well stated in Commonwealth v. Lowe Coal Co., 296 Pa. 359, 364, 365 (1929): "State taxes stand on a different basis from local levies; the former are essential to the very 'preservation' of the State itself (Schoyer v. Comet Oil & Refining Co., 284 Pa. 189, 193), while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the sovereign authority requires the direct revenues of the Commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise."

In the instant case, it is clear that if the only claimants to an insufficient fund were the local and State taxing authorities, the Commonwealth would prevail. If the only claimants to an insufficient fund were the mortgagees and the Commonwealth, by the provisions of the Unemployment Compensation Act of 1936, the mortgagees would first be paid in full, and the balance would be awarded to the State. The presence of all three claimants to this fund, the local taxing author-

ities, the mortgagees and the Commonwealth, creates a circuity of liens problem never heretofore considered by this court. We find no reported cases dealing with this specific issue, nor has able counsel called our attention to any. The authorities dealing with the conflict of Federal liens versus State and local liens are not applicable. There are, however, certain decisions in our case law that point to a logical and indisputable solution under the factual situation before us.

There are two considerations, which, in our opinion. decide this question. First, there is the question of legislative intent and, secondly, the responsibility of the mortgagee to see that local taxes have been paid. As to the first question, the legislature intended that the lien for unpaid unemployment contributions should have priority over all other claims, except preëxisting real estate mortgages. As to the second point, local taxes have priority over preëxisting real estate mortgage, but there is a presumption that the mortgagee will protect himself by seeing that local taxes are paid, or in the event that they are not, by taking appropriate legal action. In the case at bar, the mortgagees permitted four year's local taxes to remain unpaid; had action been taken, when the 1954 taxes were not paid, the property could have been sold at sheriff's sale without the complicating circumstances of Commonwealth liens.

The legislative intent, as reflected in the plain language of the Unemployment Compensation Law of 1936, as amended, was to subordinate the Commonwealth's claims for compensation liens only to the claim of a mortgagee duly qualified thereunder. It is an inescapable conclusion that the Commonwealth intended to preserve for itself its priority of lien in all other respects, and in the manner explicitly provided by other legislative enactments, heretofore reviewed.

See Ferbro Trading Corp. v. Jo-Mar Dress Corp., 78 D. & C. 337, 345 (1951). There was no intention that its lien should become junior to any other preëxisting judgments: Blue Bell National Bank v. Diller, 53 D. & C. 445 (1945). In the absence of express terms or necessary implication, it is not for the courts to deprive the State of any part of its sovereignty.

Especially is this true, when we consider the laxity of the mortgagees in this case in allowing four years of local taxes to remain unpaid by the mortgagor. As early as 1882, our Supreme Court, in Bryan's Appeal, 101 Pa. 389, 393, in discussing the priority of municipal claims under the Act of May 16, 1857, stated:

"It has never been held that charges upon or estates in land created by the owner thereof can avail against the taxing power of the Commonwealth. Municipal liens for grading or paving streets are a species of taxation and come within the rule. Such liens bind the entire estate in the land, except where an Act of Assembly directs otherwise. If it were not so, the owner of real estate could wholly defeat the taxing power by charging it with the payment of a sum of money equal to its full value."

This principle was followed in Erie v. Piece of Land, 339 Pa. 321, 326, 327 (1940), where Justice Linn said: "The land had always been subject to taxation. If a mortgagee elects not to foreclose for default in payment of taxes on the land he holds as security, he does not, by his election, exempt his interest or estate in the land from taxation; no law gives him such right of exemption. When he secured his loan by taking the mortgage, he did so with knowledge that the land was, and would continue to be, taxed. He will not be heard to say that because he had a lien under the recording acts, the government must go without its taxes. All his relations growing out of his contract

with his debtor were subject to the implied condition that the taxes must be paid out of the land."

In the case before us, the sheriff's proposed table of distribution clearly shows that if there were no local taxes remaining unpaid on these premises, both the mortgagees and the Commonwealth would receive the full amount of their liens. While the primary obligation for the payment of these taxes rests with the mortgagor, the mortgagee has a long-recognized duty to see to it that the taxes are paid so that his lien is not jeopardized. If the taxes remain unpaid, they are a first lien, preferred over the rights of the mortgagee. To the extent that the taxes are not paid, the mortgagee must lose. It would be an unreasonable expansion of the language of the statute to conclude that by its provision a mortgagee must be paid in full and the Commonwealth's revenue reduced to the extent that local taxes deplete the funds realized at a public sale. The contention of the Commonwealth that its liens must be paid, even though a loss results to the mortgagees, must be sustained.

## Decree

And now, March 28, 1958, it is ordered and decreed that:

(a) The suggested distribution of proceeds under the sheriff's distribution policy is approved;

(b) The petition of Minas Odabashian and Karnig Keshgegian for a rule to show cause why their judgment should not be paid in full is dismissed;

(c) The Sheriff of Delaware County is ordered and directed to pay to the Commonwealth of Pennsylvania the full amount of its liens;

(d) Each party shall pay his, her or its own costs;

(e) An exception is noted for the execution plaintiffs.