## Quaker State Oil Refining Corp. *v.* Lansberry (et al., Appellant).

Argued November 15, 1963. Before BELL, C. J., MUSMANNO, JONES, COHEN, O'BRIEN and ROBERTS, JJ.

*Morley W. Baker,* Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth of Pennsylvania, Department of Labor and Industry, appellant.

*Thomas F. Morgan,* with him *W. Albert Ramey,* for appellee.

OPINION BY MR. JUSTICE JONES, January 8, 1964:

Quaker State Oil Refining Company (Quaker), on August 19, 1960, entered a judgment by confession in the Court of Common Pleas of Clearfield County against Geynet Lansberry (Lansberry), in the amount of $4371.59. On January 27, 1961, the Department of Labor and Industry of the Commonwealth (Commonwealth), under the provisions of Section 308.1 of the Pennsylvania Unemployment Compensation Law[1] (Act), entered a lien against Lansberry in the amount of $588.75. On November 13, 1962, Quaker issued an execution against Lansberry and the Sheriff of Clearfield County on the same date levied on Lansberry's personal property.

The sheriff's sale was scheduled for December 14, 1962 at 2:00 p.m. at Woodland, Bradford Township, Clearfield County. Five hours prior to the time of such sale—at 8:50 a.m., December 14, 1962—the Commonwealth filed a second lien in the amount of $628.33 against Lansberry. Notice in writing of both liened claims of the Commonwealth was given to the Sheriff

---

[1] Act of 1936, Second Ex. Sess., December 5, P. L. (1937) 2897, §308.1 added 1942, Ex. Sess., April 23, P. L. 60, §4, as amended, 43 P.S. §788.1.

prior to the time of the sale but no notice was given to Quaker or anyone acting on its behalf.

From the sheriff's sale of Lansberry's personal property $1535.80 was realized of which amount the Sheriff proposed to distribute to the Commonwealth $1391.24 (the amount of both its claims) and the balance of $144.56 to Quaker. Quaker excepted to that part of the proposed distribution which provided for payment of the Commonwealth's lien filed on December 14, 1962 in the amount of $628.33. The Court of Common Pleas sustained Quaker's exceptions to the distribution and directed the Sheriff to distribute to Quaker, in addition to $144.56, $628.33, the amount proposed by the Sheriff to be distributed in payment of the Commonwealth's second liened claim.[2] From that order the Commonwealth appeals.

Section 308.1 of the Act, supra, under the authority of which the Commonwealth filed its two claims provides, in pertinent part: "All contributions [i.e., 'the money payments required to be paid into the Unemployment Compensation Fund by employers, . . ., which payments shall be used for the creation of financial reserves for the payment of compensation . . .': art. 1, §4, of the Act, 43 PS §753(g)] and the interest and penalties thereon due and payable by an employer . . . *shall be a lien* upon the . . . property, both real and personal, of the employer liable therefor, *from the date a lien* for such contributions, interest and penalties is *entered of record in the manner hereinafter provided.* Whenever the . . . property of an employer is *sold at a judicial sale,* all contributions and the interest and penalties thereon *thus entered of record* shall first be allowed and paid out of the proceeds of such sale *in the same*

---

[2] The effect of the order of the court was to permit the Sheriff to distribute to the Commonwealth the amount of its first liened claim but not its second liened claim.

*manner and to the same extent that State taxes are paid*: . . . . The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record, certified copies of all liens for unpaid contributions, interest and penalties . . ., upon which record it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed. . . ."

It is Quaker's theory and that of the court below, in reliance on *Commonwealth v. Lombardo,* 356 Pa. 597, 52 A. 2d 657, that "the judgment entered [by the Commonwealth] December 14, 1962, on which no execution was issued, but only notice given the Sheriff just before the sale"[3] was not sufficient to give the Commonwealth a prior lien and "that the Legislature never intended to give the [Commonwealth] a lien on the personal property of the debtor, before any Fi. Fa. reaches the hands of the Sheriff." In *Lombardo,* supra, this Court affirmed per curiam a decree upon the opinion of President Judge HOBAN of the Court of Common Pleas of Lackawanna County. In that opinion, the court found that the "words of the first sentence [of the Act] clearly indicate an intention to impress a lien on personalty in the hands of the employer at the time", however, since liens are not self-executing and, since a later portion of Section 308.1 provides that ". . . it shall be lawful for writs of scire facias to issue and be prosecuted to judgment and execution in the same manner as such writs are ordinarily employed", "such writs" must be "ordinarily employed" only as prescribed in the Act of 1836[4] which provides that a writ of fi. fa. will not bind a debtor's property until the writ is delivered to the sheriff. Because of

[3] Quoted from opinion of court below.
[4] Act of June 16, 1836, P. L. 755, §39, 12 P.S. §2291.

this later portion of Section 308.1, the court found there "is an ambiguity as to the effectiveness of the lien so far as it binds personal property" and, in view of such ambiguity and the absence of a clearly expressed legislative intent, held that the Commonwealth could not enforce its lien against personal property transferred, after entry of a lien, by the employer to a "bona fide transferee for legal value without actual notice of the filing of the lien as provided in section 308.1". With *Lombardo,* we agree. However, neither *Lombardo* nor *Ersa, Inc. v. Dudley,* 234 F. 2d 178— also relied on by Quaker—are presently apposite. Both these cases dealt with the question of *priority of lien*[5] whereas the present issue is that of *priority of payment.*

The second sentence of Section 308.1 provides that, when an employer's property is sold at a judicial sale, all contributions, with the interest and penalties thereon, "thus entered of record" *shall first be paid from the proceeds of such sale as State taxes are paid.* In *Pittsburgh Petition,* 376 Pa. 447, 450, 103 A. 2d 721, we said: "That unemployment compensation contributions are taxes cannot be questioned. 'The enforced payments prescribed by the Unemployment Compensation Law . . ., which provides for the payment of so-called contributions by employers into an Unemployment Compensation Fund, are . . . taxes upon the right to employ': [citing cases]. The Unemployment Compensation Law also provides that upon judicial sale of an employer's property all contributions entered of

---

[5] It is exceedingly difficult to reconcile the result reached by the court below in its order. The court held that the second claim of the Commonwealth was not a prior lien because no actual notice thereof had been given to the employer and no writ of execution had been placed in the sheriff's hands and, therefore, it denied payment on such claim. However, the first claim of the Commonwealth, although it occupied exactly the same status, was directed to be paid.

record 'shall first be allowed and paid out of the proceeds of such sale in the same manner and to the same extent that State taxes are paid' . . . . It takes no magic to establish that these contributions are taxes, . . ." In *Pittsburgh Petition,* supra, the Pittsburgh City Treasurer had sold certain real property for unpaid taxes which the City purchased; upon passage of the period of redemption, the City agreed to sell the property to a third person and the City then petitioned the court to confirm the sale free of all claims against the property. The Commonwealth had of record several liens for unemployment compensation contributions as to which it asserted priority. Our Court held that such liens were entitled to priority of payment and were not divested, either by the treasurer's sale to the City or the City's sale to a third person.

That the sale conducted by the sheriff in the case at bar was a judicial sale is clear: *City of New Castle v. John Whaley's Heirs,* 102 Pa. Superior Ct. 492, 496, 497, 157 A. 503; *Dry Dock Series Building Association v. Georeno,* 106 Pa. Superior Ct. 505, 163 A. 382; *City of Uniontown v. McGibbons,* 115 Pa. Superior Ct. 132, 139, 140, 174 A. 912.

In the case at bar, the "contributions and the interest and penalties thereon" were entered of record in accordance with the Act and, under the plain language of the Act, when Lansberry's personal property was sold at this sheriff's sale—a judicial sale—both liened claims of the Commonwealth for unemployment compensation contribution became entitled to prior payment out of the proceeds of such sale.

Moreover, the Fiscal Code of 1929[6] provides, inter alia: "All State taxes imposed under the authority of any law of this Commonwealth, now existing or that

---

[6] Act of April 9, 1929, P. L. 343, §1401, as reenacted August 19, 1953, P. L. 1146, §6, 72 P.S. §1401.

may hereafter be enacted, . . . shall be a first lien upon the . . . property, both real and personal of . . . [such person owing the tax] . . . and whenever the . . . property of . . . [such] person shall be sold at a judicial sale, all taxes, interest, . . ., penalties . . . due the Commonwealth shall first be allowed and paid out of the proceeds of such sale . . . ." The Fiscal Code, supra, is presently applicable except insofar as Section 308.1 provides that "the lien [thereunder created] shall not be prior to pre-existing duly recorded real estate mortgages." Lower courts in this Commonwealth and a federal court have so construed the Commonwealth's right to priority of payment of unpaid contributions under the Act: *Blue Ball National Bank v. Diller*, 53 Pa. D. & C. 445; *Potter Title & Trust Co. v. International Penn Collieries Co.*, 68 Pa. D. & C. 591; *Ferbro Trading Corp. v. Jo-Mar Dress Corp.*, 78 Pa. D. & C. 337; *Odabashian v. Baker*, 14 Pa. D. & C. 2d 489; *Stroudsburg Security Trust Co. v. Freight Lines Equipment Co.*, 62 Lack. Jur. 141; *In Re Einhorn Bros., Inc.*, 272 F. 2d 434.

It seems clear beyond question that upon the judicial sale of Lansberry's personal property, the Commonwealth became entitled to a priority of payment of both its claims duly entered of record.

Order reversed.