In the Matter of PIONEER SAMPLE BOOK CO., Inc., Bankrupt.

Globe Consumer Discount Company, Appellant.

No. 15795.

United States Court of Appeals
Third Circuit.

Argued Nov. 18, 1966.
Decided March 3, 1967.

* Of the Second Circuit sitting by designation.

Philip Shuchman, Philadelphia, Pa., for appellant.

Mark S. Rothman, Dept. of Justice, Tax Division, Washington, D. C., for appellee—United States of America.

Nicholas J. D'Alessandro, Asst. Atty. Gen., Bureau of Employment Security (Morley W. Baker, Asst. Atty. Gen., Walter E. Alessandroni, Harrisburg, Pa., Atty. Gen. of Pennsylvania, on the brief), for appellee—Com. of Pa., Bureau of Employment Security.

Sidney Chait, Philadelphia, Pa., (Adelman & Lavine, Philadelphia, Pa., on the brief), for appellee, trustee in bankruptcy.

## 956

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

On January 30, 1963, Pioneer Sample Book Co. filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, as amended, 11 U.S.C. § 701 et seq. That effort failing, on June 18, 1963, Pioneer was adjudicated a bankrupt. Thereafter, pursuant to court order, Pioneer's assets were sold at public auction. The net proceeds were $23,-648.43, of which $21,972.48 represented the sale of liened assets. Total assets available for distribution are $23,797.34.

At "a final meeting of creditors" held on March 31, 1964, the claim of the present appellant, Globe Consumer Discount Co., in the amount of $64,400 was properly recognized as a "valid secured interest". Globe's lien had been filed on August 18, 1960. Other lien claims were asserted as follows: United States Internal Revenue Service, for unpaid withholding and social security taxes, filed November 7, 1962 and December 21, 1962, $3,341.95; the Commonwealth of Pennsylvania, Bureau of Employment Security, for state unemployment taxes, filed on September 4, 1962 and January 14, 1963, $2,895.20; the Commonwealth of Pennsylvania, for unpaid corporation taxes, filed on May 25, 1960 and May 25, 1962, $131.27. The corporation tax claim was withdrawn on January 6, 1965, when payment of this claim in full was forwarded to the Commonwealth by Globe.

Also involved were general administrative costs aggregating $7,400.66, $5,-157.63 in bankruptcy liquidation and $2,-243.03 in the Chapter XI proceeding, and wage claims aggregating $247.92. The administrative costs and wage claims were accorded priority under section 64 (a).

The referee ordered that the entire fund be distributed in accordance with the following priorities: (1) costs of administration, (2) wage claims, (3) United States tax lien, (4) Bureau of Employment Security lien, (5) Globe's secured claim. On this appeal Globe contends that costs of administration should not have been charged against the proceeds of assets covered by its lien and that in law its lien is senior to the federal and state tax liens.

We consider first whether Globe's lien should have been accorded priority over subsequent tax liens of the United States and the Commonwealth.

■ Undoubtedly, it had been the law of Pennsylvania that the lien of such a secured creditor as Globe was subordinated to a subsequent lien of the Commonwealth for obligations incurred by the debtor under the Pennsylvania Unemployment Compensation Law, P.L. 1738, § 7, May 23, 1949, 43 P.S. § 788.1. And the Commonwealth has perfected such a lien here. However, on August 27, 1963, section 1 of an amendment to the Pennsylvania Unemployment Compensation Act, P.L. 1281, subordinated state liens for sums owed under that Act "to mortgages and other liens existing and duly recorded * * * prior to the recording of the tax lien". In addition, section 3 of the 1963 amendment declared that the provisions of the amendment "shall take effect immediately and shall be applicable to delinquencies occurring either before or after the effective date of this Act".[1]

■■ To escape the operation of this declaration of retroactivity, it has been argued here that "delinquencies", as used in the 1963 amendment, does not cover overdue obligations which had become liens prior to August 27, 1963, as had Pioneer's obligation to the Commonwealth. However, in our view a claim for overdue unemployment compensation payments is as much a "delinquency" af-

---

1. While this provision as to retroactivity, having served its purpose, was not repeated in a 1964 reenactment of the substance of the 1963 amendment, we have no doubt that the priority established in this case by force of the 1963 amendment persisted.

ter it has acquired the additional force of a lien as before. Walnut Savings & Loan Assn. v. D. & W. Builders, Inc., 1963, 32 Pa.Dist. & Co. R.2d 749.[2] We construe the 1963 amendment as making the Commonwealth's lien junior to Globe's lien in law as well as in time.

■ We have not overlooked the trustee's argument that this should not be so because under bankruptcy law the priorities of creditors are to be determined as of the filing date of the original petition, in this case January 30, 1963, several months before the 1963 amendment. However, the priority of liens which concerns us here is determined by state law. And we find no federal rule or policy against giving effect in this proceeding to the state's undertaking to make a change in otherwise controlling state law relate back to a time prior to the institution of bankruptcy proceedings. Cf. Reconstruction Finance Corp. v. Flynn, 2d Cir. 1949, 175 F.2d 761; Adams v. Bowen, 1st Cir. 1931, 46 F.2d 294; In re William Akers, Jr. Co., Inc., E.D.Pa.1940, 31 F.Supp. 900, reversed on other grounds, 3d Cir. 1941, 121 F.2d 846. "There is no vested right in priorities under the Bankruptcy Act". Adams v. Bowen, supra, 46 F.2d at 296.

■ Different considerations are applicable to the Commonwealth lien for unpaid corporation taxes in the amount of $131.27, which admittedly was senior to the Globe lien under Pennsylvania law. During this bankruptcy proceeding Globe paid that obligation of Pioneer and the Commonwealth withdrew its claim. The trustee seeks to keep this lien in the present picture solely to create a problem of circuity of liens with a view to its solution by subordinating Globe's lien to liens otherwise junior to it, as we found it necessary to do in the situations which confronted us in In re Quaker City Uniform Co., 1956, 238 F.2d 155, cert. denied 352 U.S. 1080, 77 S.Ct. 595, 1 L.Ed. 2d 599 and In re Einhorn Bros., Inc.,

1959, 272 F.2d 434. However, our disposition of the problem of circuity of liens in the *Quaker City* and *Einhorn* cases was a judicial expedient deemed necessary to achieve a practical administration of inconsistent rules of priority. We see no reason why parties to a bankruptcy proceeding should not be permitted to avoid the problem of circuity by paying and releasing a lien which might otherwise create that problem. We find no merit in any of the trustee's objections to disregarding the Commonwealth's lien that has been satisfied and released in determining priorities among the remaining liens.

■ Finally, there is the lien of the United States for unpaid withholding and social security taxes. Globe's lien on Pioneer's machinery and equipment was perfected before that tax lien. The United States properly recognizes and concedes that Globe is entitled to satisfy its claim out of its security or the proceeds thereof ahead of the government's claim. And since Globe's claim will consume those proceeds the government can realize nothing from them.

Thus, among the several lien creditors first priority in the distribution of the proceeds of the sale of Pioneer's machinery and fixtures must be accorded to Globe.

It remains to consider whether Globe's security interest in the debtor's property should have been burdened with administrative expenses of the arrangement proceeding and the subsequent bankruptcy.

In the original petition of Pioneer, a small corporation engaged in bookbinding, for an arrangement, it was asserted that the petitioner had assets of $272,200 and liabilities of $145,000 and that $250,000 of its assets consisted of machinery and fixtures in its place of business. The debtor's "Statement of Affairs", filed in February 1963, showed debts in the amount of $207,000, includ-

---

**2.** The Trustee, arguing for a contrary position, has cited Quaker State Oil Refining Corp., etc., v. Lansberry, 1964, 413 Pa. 207, 196 A.2d 649. We find that case inapposite because a judicial sale and an order for distribution of assets had occurred before the 1963 amendment.

ing an obligation to Globe in the amount of $62,000 secured by all of the debtor's machinery and fixtures. The statement also listed assets valued at $270,000, including $250,000 worth of machinery and fixtures and $4,500 in accounts receivable.

However, some two months later the report of a court ordered appraisal was filed in this proceeding and showed the total value of all of the petitioner's machinery and equipment to be only $26,141.50. At the same time it was clear that its obligations exceeded $200,000. Obviously, no arrangement could be achieved and no plan was ever submitted. Indeed, it is difficult to see how it could have been believed that an arrangement could be achieved when the Chapter XI petition was filed.

In any event, Pioneer was adjudicated a bankrupt on June 18, 1963 and all subsequent proceedings have been in ordinary bankruptcy. Pursuant to court order the machinery fixtures and goods of Pioneer were sold on July 23, 1963. The net proceeds of the sale were less than $24,000, after deducting selling expenses. It is unquestioned that Pioneer's obligation to Globe, which was secured by this property, was in excess of $60,000. In these circumstances, it was apparent on the record at the time the Chapter XI proceeding was converted into an ordinary bankruptcy that Pioneer and its general creditors had no equity in its machinery and fixtures, since their value was less than half of Globe's claim for which they were security.

It has been suggested that this situation was not apparent because Globe's claim was also secured by a second mortgage on the building which housed Pioneer's business and was owned by Merion Realty Corp. Merion and Pioneer were separate corporations, but both were wholly owned by the same individual. The argument is that Globe might have realized enough on its second mortgage on the Merion property to relieve the Pioneer personal property of the Globe obligation. However, at the times in question, Merion was also in bankruptcy.

As early as January 31, 1963 a court ordered appraisal showed the market value of the Merion owned building to be $100,000, subject to a first mortgage of $47,500 and city taxes in the amount of $25,000, both of which claims enjoyed priority over Globe's second mortgage. Moreover, it appears in the present record that after bankruptcy no offer in excess of $65,000 was ever made for the Merion property. Thus, it was apparent when Pioneer was adjudicated a bankrupt that, even in the most optimistic view, Globe's share of the proceeds of any sale of the Merion building would be less than $30,000. At the same time the Pioneer personal property had been appraised at $26,000. Thus, it would have been obvious to anyone who inquired that the Merion building and the Pioneer personalty together would not fully satisfy the secured claim of Globe. It is in the light of this situation that we must decide whether the proceeds of the sale of the liened assets can properly be burdened with the administrative expenses of the Chapter XI proceeding and the subsequent bankruptcy.

■■■ It is elementary that in a Chapter XI proceeding "only the rights of unsecured creditors of the debtor may be arranged and this without alteration of the status of any other classes of security holders". See Securities & Exchange Comm. v. United States Realty & Improvement Co., 1940, 310 U.S. 434, 452, 60 S.Ct. 1044, 1051, 84 L.Ed. 1293. For this reason it has been held that, when a Chapter XI proceeding, or a proceeding under the earlier section 77B, has been unsuccessful and has led, with the subsequent consent of the secured creditors, to a liquidation of the insolvent debtor's assets in bankruptcy, the administrative expenses of the attempted arrangement are not a proper charge against the secured creditor's interest in the proceeds of the liquidation. Miners Sav. Bank of Pittston, Pa. v. Joyce, 3d Cir., 1938, 97 F.2d 973; In re Centralia Refining Co., E.D.Ill. 1940, 35 F.Supp. 599. Facts peculiar to this case add to the normal unfairness of charging

the proceeds of the bankruptcy sale of liened assets with the antecedent Chapter XI expenses. For here, as we already have pointed out, there seems to have been no justification at the outset for proceeding under Chapter XI. It was only by assigning a grossly inflated value of $250,000 to assets which were found a few months later to be worth about $25,000 that the original petition was made to indicate even a colorable case for an arrangement. Certainly a secured creditor should not have to bear the expenses of such an unjustified proceeding.

■ We have not overlooked the fact that an adjudication of ordinary bankruptcy during the course of a Chapter XI proceeding relates back to the date of the original petition. But this useful technical device does not prevent the separate determination of Chapter XI expenses, as was properly done in this case,[3] or wiped out the facts which make it inequitable to burden a secured creditor with those expenses. In this case the costs of administration under Chapter XI, aggregating $2,243.03 should not have been charged against the proceeds of the sale of liened assets.

■ We consider next the extent of the obligation of the liened assets to share administrative expenses incurred after the Chapter XI proceeding was converted into ordinary bankruptcy. As has already been pointed out, it was apparent when the debtor was adjudicated a bankrupt that Globe's secured claim exceeded the value of the encumbered machinery and fixtures. Therefore, Globe was entitled to have this property surrendered to it rather than sold and administered in bankruptcy. Federal Land Bank of Baltimore v. Kurtz, 4th Cir., 1934, 70 F.2d 46. However, the referee has found as a fact that Globe interposed no objection to the sale of

this property and the disposition of the proceeds in bankruptcy. On this appeal, Globe has sought to counter this finding by asserting that its counsel stated orally at a hearing before the referee that he intended to file a reclamation petition for the property in question but was dissuaded by the referee's statement that he would deny any such petition. There is no record of any such colloquy. On appeal, counsel's unsupported assertion of the fact and purport of the colloquy cannot prevail over the referee's finding that no demand was made for the property's surrender. Moreover, regardless of the referee's orally stated position, counsel should have filed his reclamation petition and obtained a dispositive order if he wished to preserve an objection to the disallowance of his demand. Accordingly, we must treat this as a case where liened property was sold and administered in bankruptcy without objection by the secured creditor.

On several occasions, this court has imposed upon the proceeds of the sale of liened property some part of the burden of the bankruptcy administrative expenses. Miners Sav. Bank of Pittston, Pa. v. Joyce, supra; In re Torchia, 3d Cir., 1911, 188 F. 207; In re Vulcan Foundry & Machine Co., 3d Cir., 1910, 180 F. 671. However, that obligation is limited.[4] In Miners Sav. Bank of Pittston, Pa. v. Joyce, supra, we ruled that:

" * * * where a trustee sells a bankrupt's property free of liens, with the consent of the lienholders, the latter are chargeable not only with the actual costs of sale but also with expenses reasonably incurred in the preservation of the property, Virginia Securities Corporation v. Patrick Orchards, 4 Cir., 20 F.2d 78, and with the trustee's and referee's commissions payable with respect to the proceeds of the sale, Tawney v. Clemson, 4 Cir.,

3. Indeed, section 64(a) distinguishes Chapter XI expenses from expenses of a subsequent bankruptcy and requires that the latter be given priority over the former.

4. For one limitation that is not involved in this case, see In re Street, 3d Cir., 1950, 184 F.2d 710.

81 F.2d 300, but with no other expenses of administration, except with their consent, express or implied, In re Torchia, 3 Cir., 188 F. 207." 97 F.2d at 977.

That limitation is applicable here. Moreover, in determining what administrative expenses were justified in this case, we deem it relevant that the free assets of the estate, including the net proceeds of the receiver's brief operation of the business, amounted to less than $3,000, while the remaining property, whether the original chattels or the proceeds of their sale, would be consumed by the Globe lien. In these circumstances, only a brief and uncomplicated administration appropriate to the liquidation of a very small and simple estate was justifiable.

The following are the "costs of administration in liquidation" as approved by the referee:

COSTS OF ADMINISTRATION IN LIQUIDATION:

| | | |
|---|---:|---:|
| To: Thomas J. Curtin, Referee, Costs— | | $ 95.10 |
| " Clerk, U. S. District Court, Referee's Salary and Expense Fund 2½% of Net Realization of $27,720.01— | $ 693.00 | |
| 126 P/C — 10 + 116 @ 25¢— | 29.00 | 722.00 |
| " E. E. Lippincott, II, Liquidating Receiver's Statutory Commissions— | | 265.52 |
| " E. E. Lippincott, II, Trustee's Statutory Commissions— | | 150.00 |
| " Adelman & Lavine, Esqs., Attorneys for Liquidating Receiver— Fee | $2,000.00 | |
| Costs | 78.75 | 2,078.75 |
| " Adelman & Lavine, Esqs., Attorneys for Trustee— Fee | $ 300.00 | |
| Costs | 3.75 | 303.75 |
| " Jack H. Felzer & Co. Accountant's Compensation— | | 500.00 |
| " Eugene M. Bernstein, Appraiser's Fee— | | 210.00 |
| " Baer Insurance Agency, Trustee's Bond and Fire Insurance Premiums— | | 832.41 |

TOTAL COSTS OF ADMINISTRATION IN LIQUIDATION—$5,157.53

---

It will be observed that almost half of these costs are for attorneys' fees. The trustee and liquidating receiver was himself an attorney, competent and experienced in bankruptcy matters. We can see no justification whatever for employing counsel to assist him in so simple a matter as the sale of assets and the distribution of this small estate, none of which would be available to unsecured creditors. We recognize that the attorneys rendered some professional services,

which otherwise would have been required of the trustee, and it is unfortunate that these services must be uncompensated. However, in our view the employment of counsel was so clearly unnecessary and such an unjustifiable burden upon this simple liquidation of a small estate that the items for the compensation of attorneys must be disallowed in their entirety as a charge upon liened or free assets.

The costs of the referee and the statutory commissions of the liquidating receiver and trustee involve different considerations. In permitting the secured assets to be sold and administered in bankruptcy, the secured creditor Globe necessarily consented that the disposition and distribution of its security be the principal business of the trustee and receiver. Thus, the liened assets should bear their share of these costs, determined by the proportion of the entire estate represented by these assets.

Three items of administrative expense remain to be considered. In his order of final distribution, the referee allowed costs aggregating $1,526.16 for the compensation to an accountant, an appraiser's fee and premiums on the trustee's bond and fire insurance. While the showing in the record concerning these expenses, particularly the accountant's fee, is less informative than one might wish, we are satisfied that in their nature they were appropriate for the safeguarding and administering of the entire estate, the liened as well as the free assets. Accordingly, these charges should be prorated between the liened and the free assets.

In summary, with the fees claimed by the attorneys for the trustee and liquidating receiver disallowed, the remaining administrative costs of liquidation in bankruptcy should be charged against the distributable assets of the estate and prorated between the proceeds of liened property and free assets. The remainder of the proceeds of the liened property is distributable to Globe.

The costs of the administration of the Chapter XI proceeding should be charged against the free assets of the estate. If any distributable sum remains, it will be available for priority wage claims. On the present record it seems clear that nothing will remain for the claims of the United States and the Commonwealth.

The judgment will be reversed and the cause remanded for the entry of an order of distribution consistent with this opinion.