**In the Matter of B & G FABRICATING COMPANY, INC., a Pa. Corporation, Bankrupt.**

**Bankruptcy No. 78–628.**

United States Bankruptcy Court, W.D. Pennsylvania.

June 23, 1983.

Lawrence Ravick, Pittsburgh, Pa., for trustee.

Stephen Laidhold, Pittsburgh, Pa., for General Elec. Credit Corp.

Gary Nelson, Pittsburgh, Pa., for Mellon Bank.

Stanley Ostrow, Pittsburgh, Pa., for Air Pol.

Jeffrey Weinberg, Pittsburgh, Pa., for landlord, Angelo Noce.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is Landlord's objection to Trustee's petition to make partial distribution of proceeds from the sale of liened assets to the three secured creditors involved herein. In its objection, Landlord asserts an administrative priority for rent of premises leased by Debtor upon which the collateral was stored prior to and until the time of sale. Landlord seeks payment of the rental obligation out of the fund derived from the sale of liened assets.

Trustee has made partial distribution of proceeds to the secured creditors and has withheld certain amounts claimed by Landlord pending resolution of the present dispute.

For the reasons that follow, the Court concludes that there is no authority for the payment sought by Landlord under the circumstances at bar. Accordingly, the Landlord's objection to Trustee's petition to make partial distribution of sale proceeds to secured creditors is dismissed.

The facts are as follows. On December 5, 1978, B & G Fabricating Company filed a voluntary petition under Chapter XI of the Bankruptcy Act. Debtor continued to operate its business upon leased premises located in Carnegie, Pennsylvania and owned by A.J. Noce and Virginia Noce, his wife (hereinafter "Landlord").

Shortly before the filing of the petition under Chapter XI of the Bankruptcy Act, General Electric Credit Corporation (hereinafter "GECC") entered into an agreement with Debtor for the lease of certain machinery, and properly perfected its security interest therein. On November 7, 1978, GECC filed a complaint in reclamation seeking recovery of the leased equipment. By Order of Court dated November 29, 1978 Debtor was authorized to use the equipment on the condition that it pay GECC its regular installment lease payments. Upon Debtor's default in June, 1980, GECC filed a motion seeking immediate return of its collateral. On or about the same time, Debtor filed a petition seeking adjudication.

In addition thereto, Air Pol Industries, (hereinafter "Air Pol") held a perfected security interest in certain of Debtor's machinery and equipment. In September, 1979 Air Pol filed a complaint in reclamation. The hearing on the matter was continued by the parties for settlement.

Mellon Bank, the third secured creditor involved herein, held a perfected security interest in all accounts, chattel paper and inventory. In January, 1979 Mellon filed a complaint in reclamation. Upon motion of Mellon, the hearing was continued with the consent of the Debtor.

In July, 1980, Debtor was adjudicated a bankrupt and a trustee was appointed. Shortly thereafter, Trustee filed a complaint to sell personal property, equipment, and inventory located at Debtor's place of business, free and clear of liens and encumbrances. Included in the sale was property subject to the security interests of GECC, Air Pol and Mellon.

The aforementioned secured creditors consented to the sale and agreed that their liens would be divested and shifted to the sale proceeds. Trustee approximated that the balance due on GECC's secured debt was $57,000. GECC consented to sale of the equipment subject to its security interest on the condition that its net recovery would be equal to or in excess of $50,000.

The gross proceeds of the sale held on October 21, 1980 were $97,840, against which was charged a 10% auctioneer's commission plus advertising costs and labor. Net proceeds were in the amount of $80,574.50. Machinery subject to GECC's security interest was sold for $50,000. GECC consented to further reduction of this figure to $49,500., the difference representing partial payment of the auctioneer's commission.

Equipment subject to Air Pol's security interest was sold for $11,225. Air Pol agreed that its share of the costs and expenses was $890.81. Inventory subject to the security interest of Mellon was sold for

$5062.50. Mellon agreed that its share of the costs and expenses was $895.29. In the petition to make partial distribution of proceeds of sale, Trustee sought the Court's approval to pay Air Pol and Mellon the amounts of $10,334.09 and $4167.21 respectively.

Additionally, the Court notes that the Landlord signed various Landlord Release and Waiver Forms on behalf of the above-mentioned secured creditors, wherein it purportedly waived its right to distrain their collateral in the event of Debtor's default in its rental obligation. In the case of GECC the waiver was signed by A.J. Noce and Associates, while the record owner of the premises was A.J. Noce and Virginia Noce, his wife. It is not altogether clear from the record whether Landlord's prior objection to the validity of the waiver has been withdrawn. Further, it appears that Mellon's waiver was signed by A.J. Noce individually subsequent to the filing of the petition under Chapter XI of the Bankruptcy Act. However, determination of the waiver's validity is not necessary for resolution of the dispute at bar.

After hearing on the Trustee's petition to make partial distribution to the secured creditors, Trustee was directed by the Court to withhold administrative rent from the secured creditors pending final account and distribution; the balance to be paid to secured creditors immediately. In accordance therewith, Trustee delivered to Mellon a check representing proceeds from the sale of its collateral minus the agreed upon costs. Trustee further withheld the amount of $968.44 as Landlord's alleged administrative expense pending resolution of the dispute at bar. Similarly, Trustee delivered to Air Pol the amount realized from the sale of its collateral, minus the agreed upon costs, and alleged administrative rent in the amount of $1496.68. Further, Landlord apparently seeks contribution from GECC, although the amount is unclear from the record.

The Court now turns to the Landlord's objection and the responses thereto. Landlord asserts that the property subject to the security interests of GECC, Air Pol and Mellon comprised substantially all personal property stored upon the premises leased by the Debtor; and that it was unable to relet the premises during the period between the appointment of the Trustee and the sale of Debtor's assets. Landlord further avers that the monthly rental for the premises was $6,200 per month; or $12,400 for the months of September and October, 1980. Landlord seeks 90% of the rent, or $11,160; for the collateral of the secured creditors herein occupied 90% of the leased premises. In support thereof, Landlord cites § 506(c) of the Bankruptcy Code which in some circumstances permits trustee to recover reasonable and necessary costs of preserving collateral from the involved secured creditor. However, the Court notes that the provisions of the Bankruptcy Act are controlling in the present case at bar.

The relief requested by Landlord in its brief differs from that set forth in its objection. In its brief, Landlord argues that it is entitled to administrative expenses for rent equal to the percentage of the amounts received from the sale of collateral in relation to the total amount of the sale. The total proceeds of sale were $97,840., of which 71% or $69,087.50 represents the amount realized by the three secured creditors herein. Therefore, Landlord requests 71% of its administrative rent claim, or $8,804.00. Landlord further asserts that the "release and waiver" does not defeat its right to administrative rent.

In its brief in opposition to Landlord's objection, GECC asserts that under the provisions of the Bankruptcy Act, the Landlord's claim is not entitled to priority over the security interest of GECC, for liens must be satisfied before dividends to unsecured creditors or administrative expenses can be paid. The Trustee also asserts that the unsecured creditors who have had their goods sold by the Trustee are entitled to payment of the proceeds prior to satisfaction of the Landlord's claim.

Air Pol has submitted a brief wherein it argues that the Landlord's waiver of its lien and right to distrain on Debtor-Tenant's

machinery carries over into the Debtor-Tenant's bankruptcy administration, so that proceeds from the sale of assets subject to that waiver are free and clear of Landlord's claim to a percentage of priority rent during the period of administration.

In resolution of the dispute at bar, the Court turns to § 64(a)(1) of the Bankruptcy Act, which provides as follows:

The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of the bankrupt estate, and the order of payment shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to the filing of the petition.

■ Further, claims for rent accrued during a trustee's occupation are entitled to first priority under § 64(a)(1). *Lerner Stores Corp. v. Electric Maid Bake Shops,* 11 Am.B.R. (N.S.) 704, 24 F.2d 780 (5th Cir.1928). However, "all liens and encumbrances not invalidated by the Act must be recognized and enforced in bankruptcy liquidation. Such liens and encumbrances . . . are generally a first charge on the assets of the estate ahead of priority established by § 64." *Collier on Bankruptcy,* Vol. 4B, 70.-99 at 1218 (14th Ed.1982).

The Court now examines the more narrow question of the circumstances under which proceeds from the sale of liened assets are chargeable with general expenses of administration. There is authority for the position that proceeds from the sale of liened assets are chargeable only with costs which lienholder would pay in lien enforcement proceedings in state court, but with no further costs. *In re Williams Estate,* 156 F. 934 (9th Cir.1907). However, other courts have adopted the rule that where a lienholder consents to a sale free and clear of liens, he should be charged with a portion of the administrative expenses associated therewith. Nevertheless, "a lienholder cannot be charged with additional expenses or the general costs of administration of the bankrupt's estate unless he has in some manner caused or benefited from such ex-

penditure or expressly or impliedly consented thereto." *Collier on Bankruptcy,* Vol. 4B, 70.99 at 1232 (14th ed. 1982). Collier further notes that this phase of bankruptcy law has been plagued with inconsistent generalities, irreconcilable rules and disagreements between and within circuits. *Collier, supra.* at 1227.

The Third Circuit has addressed this issue in *Matter of Pioneer Sample Book Co.* 374 F.2d 953 (3rd Cir.1967). Therein, debtor filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, and was subsequently adjudicated a bankrupt. Thereafter, debtor's assets were sold at public auction. The net proceeds of sale were approximately $23,000, and the primary secured creditor was owed in excess of $64,000 on his secured debt. Among other issues, the Court considered the extent to which the secured creditor was obligated to share in the administrative expenses incurred subsequent to debtor's adjudication. The Court states as follows:

On several occasions, this court has imposed upon the proceeds of the sale of liened property some part of the burden of bankruptcy administrative expenses. (citations omitted). However, that obligation is limited. In *Miners Sav. Bank of Pittston, Pa. v. Joyce* [, 3d Cir., 1938, 97 F.2d 973], *supra.* we ruled that:

* * * where a trustee sells a bankrupt's property free of liens, with the consent of the lienholders, the latter are chargeable not only with the actual costs of sale but also expenses reasonably incurred in the preservation of the property, (citations omitted), and with the trustee's and referee's commissions payable with respect to the proceeds of the sale, but with no other expenses of administration, except with their consent, express or implied. (citations omitted). (p. 959).

■ In the case at bar, the Court concludes that payment of administrative rent out of proceeds from sale of liened assets is not within the contemplation of *Matter of Pioneer Sample Book Co., supra.* While Landlord provided safe storage of the collateral up until the time of sale, benefit to

secured creditors herein was speculative in light of their timely complaints for reclamation. Further, upon sale of its collateral, GECC accepted an amount far less than its secured debt; and thereafter consented to a further reduction of its recovery for contribution to the auctioneer's commission. Additionally, both Air Pol and Mellon have already paid $890.81 and $895.29 respectively for their share of costs and expenses arising from the sale. Further erosion of the recovery on their secured debt is neither authorized by the Bankruptcy Act nor the caselaw thereunder.

Based upon the foregoing, the Court is satisfied that there is no authority for payment sought by Landlord out of liened assets in the case at bar. While the Landlord's claim may be an allowable administrative expense, that issue is not presently before the Court. Accordingly, Landlord's objection to Trustee's petition to make partial distribution to secured creditor is dismissed.

Robert S. Brill, Minneapolis, Minn., for Leisure Dynamics.

Michael A. Kahn, Chicago, Ill., and Joseph Alexander, Minneapolis, Minn., for Howell-North Books.

Seven B. Nosek, Minneapolis, Minn., for Committee of Unsecured Creditors.

Diane Malfeld, Minneapolis, Minn., for Walter E. Heller & Co.

Gerald D. Mindell, Chicago, Ill., for defendant, Continental Illinois Nat. Bank & Trust Co. of Chicago.